Carlos Torres **SANTANA,**
et al., **Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civil No. 93–1195(SEC).**

United States District Court,
D. Puerto Rico.

March 26, 1996.

Graham A. Castillo–Pagán, Hato Rey, PR, for plaintiffs.

Fidel A. Sevillano del Río, Assistant U.S. Attorney, Hato Rey, PR, for defendant.

## OPINION AND ORDER

CASELLAS, District Judge.

This is an unfortunate case that should never have happened. A sick veteran came in for medical treatment to the Veterans Administration Hospital (the "VA Hospital") and came out of the hospital beaten up and criminally prosecuted. Sometimes, the law does not necessarily coincide with justice. This case is ultimately a reminder that the law "does not prohibit everything that is intensely undesirable." *Bennis v. Michigan* —— U.S. ——, 116 S.Ct. 994, 134 L.Ed.2d 68 (Thomas, J. concurring). Despite the Court's personal regret for the unfortunate sequence of events which led to plaintiffs' eventual beating, arrest and prosecution, we find that the facts and the applicable law in the abovecaptioned case do not constitute sufficient cause to impose liability upon the government. Accordingly, this Court finds for defendants on all counts and hereby **DISMISSES** plaintiffs' claims against defendants.

## I. FINDINGS OF FACT

On November 23, 1990, plaintiffs Carlos Torres Santana ("Carlos"), and Luis Torres Santana ("Luis"), celebrated the Thanksgiving holiday at their mother's house from approximately 8 p.m. until 1 a.m. At approximately 1 a.m., on the morning of November 24, 1990, Luis and Carlos Torres Santana left their mother's house and went to Carlos' house to continue the holiday celebration.

Sometime between 8 p.m. on November 23, 1990 and 2 a.m. of November 24, 1990, plaintiffs Carlos and Luis consumed an unknown quantity of alcohol. Sometime between 1 a.m. and 2 a.m. on November 24, 1990, Luis vomited blood at his brother's house. Such vomiting could have been the result of an old peptic ulcer becoming irritated. It is common knowledge that alcohol affects ulcers.

Carlos decided to accompany his brother Luis to the Veterans Administration Hospital, since both were Army veterans and the VA Hospital was near Carlos' house. The brothers arrived at the VA Hospital sometime between 2:30 a.m. and 3:00 a.m., and entered through the emergency entrance. Both brothers went to the waiting room of the hospital.

Carlos approached and spoke with the attending clerk at the waiting room, Mr. Jose L. Rosado. At the time that the Torres Santana brothers arrived at the VA Hospital, between 2:30 a.m. and 3:00 a.m., there were no other patients in the waiting room. Upon Rosado's request, Carlos produced a DD–214 form, an Army Reserve I.D. card, and a driver's license on behalf of his brother. (Joint Exhibit II, p. 16–17) The VA Hospital requires the DD–214 form to determine that a person has been honorably discharged from the armed forces and that such individual is entitled to the medical treatment administered by the hospital.

The form was not completely legible, and the clerk took some time to process it, due to his alleged inability to read the DD–214 form. (Joint Exhibit II, p. 16) The clerk requested further identification to determine if Luis was indeed a veteran and therefore eligible to receive free medical treatment at the VA Hospital. Although there was con-flicting testimony regarding the length of time which the clerk took in processing the application, it does appear that he took his time and service was not prompt. The clerk did not have any other patients to register at the time, and, when taken together with the Army Reserve I.D. and the driver's license submitted, the DD–214 form could have been readily ascertained to be genuine.

This delay in processing had not been the first time that duty clerks had failed to properly wait on patients. Acting Police Supervisor Pedro Flores noted in his Uniform Offense Report in this case that:

> We, the P/O's [police officers] are having problems during the shifts after working hours; 15:00 hours to 0700 hours [sic] because in the way **outpatients seeking for treatment are being treated [sic] by employees without no respect or consideration;** arising in arguments between employees and outpatients; then we are called when patients are already upset and they get upset and against P/O's.

> We **strongly recommend that some kind of training on public relations, courtesy, ethic and discipline be given to those MAS employees dealing with the veterans** or persons seeking for treatment. (Joint Exhibit II, p. 13) (emphasis added)

Both Carlos and Luis Torres Santana became visibly upset with the delay caused by Jose L. Rosado's administrative requirements. Finally, the on-duty Administrator, Mr. Mortimer de León, told Rosado to go ahead and register the veteran.

Carlos addressed clerk Rosado in a boisterous, profane and threatening manner, as he demanded immediate treatment for his brother's condition. (Joint Exhibit I, p. 3, p. 11) Carlos had a lengthy medical record of psychiatric illness. (Joint Exhibit III, Psychiatric Evaluation of Carlos Torres Santana by Dr. Fernando J. Cabrera) Dr. Fernando J. Cabrera, who conducted a psychiatric evaluation of Carlos Torres Santana after the incident, concluded that Carlos was a "chronic Schizophrenic paranoid type with acute exacerbation." Dr. Cabrera also noted that at the time of the alleged incident on November 24, 1990, he was "in acute exacerbation of

his paranoid symptomatology." (Joint Exhibit III, p. 2–4)

The clerk, Jose L. Rosado, concerned with Carlos and Luis' boisterous and aggressive attitude, notified security to calm both brothers down. VA Police Officer Jorge Rivera, upon Rosado's request, came into the waiting room and told both brothers to calm down, that the medical staff would soon take care of them. He had a radio in his hand. A discussion ensued between police officer Rivera and the Santana brothers.

Luis hit Rivera on the right eyebrow, causing Rivera to bleed profusely. The wound in Rivera's eyebrow required between 5 and 6 stitches. Rivera proceeded to arrest him and repelled the aggression. He then used mace on Luis. Both brothers joined in the fray against Rivera. Shortly thereafter the other two guards Pablo Ruiz and Pedro Flores came into the room.

A brutal melée ensued, until the three guards subdued and submitted both brothers, Carlos and Luis Torres Santana into obedience. They were handcuffed, restrained and placed on gurneys for medical treatment of the injuries suffered during the melée. Mace was the primary weapon of the police officers at the VA Hospital. None of the police officers carried baton sticks. Police officer Rivera used mace spray against Luis in his effort to subdue and restrain him. Luis suffered some facial burns from the spray of mace.

During the brawl, all parties involved suffered multiple bruises and lacerations throughout all parts of their bodies. The Torres Santana brothers, however, suffered more than the officers. (Plaintiff's Exhibit 1–h, 1–g, 1–L, 1–m, 1–o, 1–p, 1–q, 1–s) (Defendant's Exhibit A(1), A(2), A(4), A(5), A(9)). The injuries sustained by the parties were not unusual for a melée of this nature and magnitude, which involved persons with military and police training. The officers Jorge Rivera, Pablo Ruiz and Pedro Flores used all necessary force required to subdue the brothers, which involved punching, tackling plaintiffs to the floor and violent scuffling with the brothers to handcuff them.

Luis suffered an injury to his head, from which he bled profusely. (Plaintiff's Exhibit 1–a) The cause of Luis' head injury is not clear: the blow to the head may have been caused by one of the guards; from his head hitting the floor during the scuffle, or he may have fallen against the side of a chair; or his head may have hit the edge of a column during the brawl. Police officer Jorge Rivera suffered a broken hand during the scuffle. He lost 20% mobility in his hand due to this incident. (Defendant's Exhibit A(8)). Officer Pedro Flores suffered injuries to his neck, jaw, legs, arms and back. All those injuries were sustained during the scuffle. Pablo Ruiz suffered a trauma on his right hand (Joint Exhibit II, p. 7)

After the police officers subdued Luis, they strapped him to a gurney and took him to the emergency room for medical attention. Once in the medical room, medical staff stitched his head wound and sedated him to control his aggressive behavior. Carlos, who had also been handcuffed by the guards after the fray, attempted to flee the hospital. Police guards Pedro Flores and Pablo Ruiz dragged him back into the building.

Upon his capture, officer Pedro Flores and the medical staff strapped Carlos to a gurney and also provided him with medical treatment. The medical staff sedated him, in view of his overly aggressive behavior, in order to provide the necessary medical treatment for his injuries.

Dr. Osvaldo Caro, the psychiatric intern at the VA Hospital, conducted a psychiatric evaluation of Luis. He noted that both brothers had drank "large amounts of alcohol." Luis admitted to him that he had drank an "unknown quantity of alcohol." (Joint Exhibit I, VA Medical Certificate, p. 1, back page; p. 9) Dr. Caro concluded that Luis had "strong alcohol breath" Id. He also indicated that Luis suffered from "Alcohol intoxication" Id. Finally, Dr. Caro noted that Luis had suffered an "acute psychotic episode secondary to alcohol intoxication" Id.

Dr. D. Santana, who sutured Luis' head wound, noted in his report that the patient was "under alcohol effects." (Joint Exhibit 1, Medical Certificate, p. 9) The medical staff indicated in the Admission Room Pre–Admis-

sion Assessment Report that Luis smelled of ethanol (alcohol). (Joint Exhibit, p. 11) Dr. Carlos Diaz, attending physician at the VA Emergency room at the time of the incident on November 24, 1990, conducted a medical examination of Luis. (Joint Exhibit 1, VA Medical Certificate, p. 1) Dr. Diaz concluded that Luis was "agitated, aggressive, restless, anxious." (Joint Exhibit I, p. 1). He also testified that Luis appeared to be under the influence of alcohol or a similar drug. The Torres Santana brothers refused to submit themselves to a blood test. (Joint Exhibit I, p. 4, Nursing Notes, p. 13)

On the morning of November 24, 1990, an FBI agent interviewed Luis and Carlos Torres Santana in the Hospital regarding the brawl in which they had been involved. Luis and Carlos were released from the VA Hospital that same day. On November 30, 1990, Special Agents of the Federal Bureau of Investigation arrested both Carlos and Luis and charged them with assaulting, threatening, intimidating and interfering with Jorge L. Rivera, Pablo Ruiz de Jesus and Pedro Flores, VA Police Officers, (law enforcement officers within the meaning of Title 13, U.S.C. § 114), while they were engaged in the performance of their official duties. They were arrested for assaulting a federal officer.

In the criminal trial, case no. Cr. 90–434–01(PG) Luis was found not guilty by a jury. On March 22, 1991, the Court entered a judgment dismissing the charges against Carlos, since the Court determined he was incompetent to stand trial. (Joint Exhibit III, Psychiatric Evaluation re: Carlos Torres Santana, Cri.Case. No. 90–434). The psychiatrist who conducted Carlos' psychiatric evaluation concluded that "we are dealing with a chronic Schizophrenic paranoid type with acute exacerbation individual, who at the present time is in remission of the acute exacerbation. He can participate in his own defense, understand the court proceedings and assist his counselor, but at the time of the alleged incident, I believe he was in acute exacerbation of his paranoid symptomatology." Id.

## II. CONCLUSIONS OF LAW

### Federal Tort Claims Act

### 28 U.S.C. § 1346(b) United States as defendant

Subject to the provisions of chapter 171 of this title, the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or **personal injury** or death **caused by** the **negligent or wrongful omission** of any employee of the Government **while acting within the scope of his office or employment,** under circumstances **where the United States, if a** private person, **would be liable** to the claimant **in accordance with the law of the place where the act** or omission **occurred. (Emphasis added)**

The Federal Tort Claims Act requires that the claimant must establish that plaintiffs were injured as a result of a wrongful act, omission or neglect of a VA employee acting within the scope of his employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with law of the Commonwealth of Puerto Rico.

Accordingly, plaintiffs' claims for malicious prosecution, illegal deprivation of liberty and tortious conduct must be examined according to Puerto Rico law.

### Legal Standard for Malicious Prosecution

■ This Court explained the applicable standard in *Harrington v. U.S.*, 748 F.Supp. 919, 933 (D.Puerto Rico 1990) (citing Puerto Rico law):

In order for plaintiffs to prevail in a claim for malicious prosecution, they must allege and prove four essential elements:

(1) that defendants initiated and instigated a criminal action against plaintiffs;

(2) that the criminal action terminated in favor of plaintiffs;

(3) that defendants acted with malice and without probable cause, and;

(4) that plaintiffs suffered damages.

*Ocasio Carrasquillo v. Rosa Berrios*, 88 J.T.S. 42 (1988); *Raldiris v. Levitt & Sons of Puerto Rico, Inc.*, 103 D.P.R. 778, 781 (1975). *See also Torres v. Superintendent of Police of Puerto Rico*, 893 F.2d 404, 409 n. 7 (1st Cir.1990).

The Supreme Court of Puerto Rico defined the term "probable cause", in the context of an action for malicious prosecution, as a suspicion founded upon circumstances sufficiently strong to persuade a reasonable man that the accusation against the prosecuted person is true. The Court added that the determination of probable cause does not depend upon whether or not the offense was committed, but on the belief of the accuser in the truth of the charge made by him. *Raldiris v. Levitt, supra.*

■ Upon careful application of the above-mentioned law to the facts of the present case, this Court concludes that plaintiffs have failed to meet one of the essential elements of their claim for malicious prosecution. Defendants had probable cause in arresting and prosecuting plaintiffs for assaulting, threatening, intimidating and interfering with law enforcement officers while they were engaged in the performance of their official duties.

As noted in our conclusions of fact, Luis and Carlos Torres Santana engaged in boisterous and unruly behavior; and used loud and profane language against the clerical staff and police officer Rivera. Both brothers attacked police officer Rivera and engaged in a bloody and violent brawl with police officers Rivera, Flores and Ruiz. The brothers resisted arrest violently and forced the police officers to use all necessary force to subdue them and carry out their arrest. All these facts lead the Court to conclude that the government had sufficient probable cause to arrest and prosecute them.

In retrospect, and considering the lack of attention provided by the reception personnel to these veterans, the VA Hospital might have left the administrative violations in force, and not pursued further prosecution of the Torres Santana brothers. (Joint Exhibit II, Pedro Flores' Uniform Offense Report, p. 9, Violation Notice of $250.00 issued to Luis and Carlos Torres Santana) However, the facts do not reveal any malice on behalf of the police officers or the Special Agents from the Federal Bureau of Investigation which charged and prosecuted them. Accordingly, plaintiffs' claim against defendants for malicious prosecution is hereby **DISMISSED.**

## Legal Standard for False Arrest/False Imprisonment/Illegal Deprivation of Liberty

■ Under Puerto Rico law, the causes of action for false arrest and false imprisonment share identical elements. *Casanova v. González Padin*, 47 P.R.R. 462, 470 (1934). The Puerto Rico Supreme Court has stated that a cause of action under these legal theories accrues every time that a "person, whether or not a law enforcement officer, may by himself or through another one unlawfully detain or cause the unlawful detention of another person." *Ayala v. San Juan Racing Corp.*, 112 D.P.R. 804, 813 (1982). The Supreme Court has noted, however, that in actions for false arrest and imprisonment brought against law enforcement officers the determination of what constitutes an unlawful detention shall be made according to the requirements established in Rule 11 of the Puerto Rico Rules of Criminal Procedure. (34 L.P.R.A., App. II)

**Rule 11 states:**

A peace officer may arrest a defendant without the corresponding warrant:

(a) When he has reasonable grounds to believe that the person about to be arrested has committed the offense in his presence. In this case the **arrest shall be made immediately or within a reasonable time after the commission of the offense.** Otherwise, the official shall request that a warrant of arrest be issued. (emphasis added)

(b) When the defendant has committed a felony, although not in the officer's presence

(c) When he has reasonable cause for believing that the person about to be arrested has committed a felony, regardless of whether or not the said offense was in fact committed.

■ Upon careful scrutiny of the record and applicable law, this Court concludes that

plaintiff's claim for false arrest/false imprisonment/illegal deprivation of liberty must fail. The Supreme Court of Puerto Rico has expressly held that police officers from the VA Hospital have the authority to make arrests pursuant to Rule 11 of the Puerto Rico Rules of Criminal Procedure, 34 L.P.R.A., App. II., whenever the alleged criminal activity is punishable under both Puerto Rican and federal law. *Pueblo de Puerto Rico v. Velazco–Bracero,* 91 J.T.S. 32, 8502.

It is clear in the present case that officers Rivera, Ruiz and Flores made an arrest for an offense which was punishable under both Puerto Rican and federal law. As noted above, plaintiffs attacked officer Rivera and resisted arrest. They could have been charged for battery under Article 95 of the Puerto Rico Penal Code.

Accordingly, officers Jorge Rivera, Pablo Ruiz and Pedro Flores conducted a legal arrest pursuant to Rule 11(a) of Criminal Procedure when they arrested plaintiffs without a warrant, since they had reasonable grounds to believe that the plaintiffs had committed a crime in their presence. Jorge Rivera personally witnessed the offense, when plaintiffs perpetrated the offense against him. The other two officers, Pablo Ruiz and Pedro Flores, also witnessed the brothers' attack upon their fellow officer and promptly went to his aid. They proceeded to arrest Luis and Carlos Torres Santana immediately after the commission of the offense. Accordingly, plaintiffs' claim for false arrest/false imprisonment and illegal deprivation of liberty is hereby **DISMISSED.**

**Liability for Tortious Conduct under Art. 1802 of the Puerto Rico Civil Code Required Elements to Establish Liability under 31 L.P.R.A. § 5141**

This Court has stated on numerous occasions the requirements to establish liability for tortious conduct under Puerto Rico law. In *Burke v. Compagnie Nationale Air France,* 699 F.Supp. 1016, 1019 (D.Puerto Rico 1988) (quoting H.M. Brau del Toro, *Los Daños y Perjuicios Extracontractuales en Puerto Rico,* 141 (2d ed. 1986)), the Court noted:

Liability under Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141, requires proof of three elements: (1) negligent or culpable conduct; (2) harm; and (3) a legally sufficient causal connection between the conduct and the harm. *See also Sociedad de Gananciales v. Gonzalez Padin Co., Inc.,* 117 D.P.R. 94, 106 (1986).

The Court may conclude that defendants' conduct constituted a **culpable or negligent act** if their conduct reflected a lack of due care; that is, that defendants did not anticipate and foresee the rational consequences of an act, or the omission of an act, which a prudent and reasonable man would have foreseen in the same circumstances. *Ocasio Juarbe v. Eastern Airlines, Inc.,* 125 D.P.R. 410, 419 (1990).

■ The Court concludes that plaintiffs have failed to establish the essential element of negligence. Police officers Jorge Rivera, Pedro Flores and Pablo Ruiz acted as prudent and reasonable persons would have acted under similar circumstances. Accordingly, plaintiffs' negligence claim against defendants for use of excessive force is hereby **DISMISSED.**

Rule 16 of the Rules of Criminal Procedure of Puerto Rico (34 L.P.R.A.App. II) states helps this Court to elucidate the applicable standard of care in the above-captioned case:

When the arrest is made by an officer under the authority of a warrant, or without a warrant, for a felony committed in his presence, if after informing the person to be arrested of the intention to make the arrest, said the person flees or forcibly resists, the officer may use all the means necessary to effect the arrest.

**To make an arrest under any other circumstances,** any officer or private person **may use all necessary means,** except that he shall not inflict grave bodily injury. (emphasis added)

The Court must apply the standard described in the second sentence of Rule 16, since plaintiffs Torres Santana did not commit a felony, but rather a misdemeanor. Accordingly, police officers Jorge Rivera, Pedro Flores and Pablo Ruiz employed all necessary means to make the arrest, which included the use of mace spray against the attack-

ing Santana brother; tackling and bringing plaintiffs to the floor, throwing punches in self-defense and to subdue the brothers, pinning the hands of the respective Santana brothers behind their back to handcuff them, and dragging the handcuffed Carlos into the emergency room to prevent his escape; albeit the poignant sight of two police officers dragging an armed forces veteran across the pavement must have been a humiliating experience for plaintiff, this incident does not constitute negligent conduct by the officers. As noted by Rule 16, the police officers used **all necessary means** to subdue and arrest Carlos. Indeed, the police officers would have been derelict in their duties if they had allowed an angry, unruly veteran with a long history of psychiatric illness to roam around handcuffed through San Juan's dark streets. For his own protection, they had to take him back to the hospital, while he calmed down.

█ Although Rule 16 expressly forbids the officers from inflicting grave bodily injury, we must not interpret this admonition so broadly as to effectively negate the meaning and purpose of Rule 16. The term "grave bodily injury" certainly comprises certain kinds of acts like shooting or knifing, even severely beating a person with a nightstick. *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1990). Notwithstanding the scope of the term "grave bodily injury", we need not tarry. The facts of the present case indicate that police officers Rivera, Ruiz and Flores did not inflict grave bodily injury upon defendants. It is clear that plaintiffs suffered multiple bruises and lacerations; Carlos chipped one of his front teeth during the scuffle; Luis suffered a significant head injury which required several stitches; he also suffered some facial burns from the spray of mace during the brawl.

But as the Court noted above, such injuries are typical in a melée of such nature and magnitude. Officer Rivera suffered a broken hand, which impaired mobility of that hand by 20 percent; officer Flores suffered bruises in the face, neck leg and arms; officer Ruiz suffered a bruised hand during the brawl. In view of these circumstances, the Court concludes that the police officers did not inflict grave bodily injury upon plaintiffs;

rather, they acted within the scope of their authority. Accordingly, we find that plaintiffs have failed to establish an essential element to recover under the § 1802 cause of action. Therefore, plaintiffs' negligence claim under § 1802 against defendants is hereby **DISMISSED.**

## CONCLUSION

Once again, our holding for the defendants in the present case does not constitute a condonation of the attitude by the reception staff towards Luis and Carlos Torres Santana. Perhaps if the VA Hospital staff had been more patient, diligent and receptive to their fellow veterans, this unfortunate incident could have been avoided. We strongly encourage the Veterans Administration to heed Mr. Pedro Flores' admonition that "some kind of training on public relations, courtesy, ethic and discipline be given to those MAS employees dealing with the veterans or persons seeking treatment." Such advice mirrors the oft-quoted aphorism: "an ounce of prevention is worth a pound of cure." We need not say more. Accordingly, plaintiffs' complaint in the above captioned case is hereby **DISMISSED. JUDGMENT** shall follow accordingly.

**SO ORDERED.**