Alirio SEGARRA JIMENEZ, Plaintiff

v.

BANCO POPULAR, INC.,
et al., Defendants.

Civil No. 03–1475(SEC).

United States District Court,
D. Puerto Rico.

March 22, 2006.

Julio E. Gil–De–La–Madrid, Rudolph C. Campbell, Gil De Lamadrid, PSC, Bayamon, PR, for Plaintiff.

Frances R. Colon–Rivera, Saldana & Carvajal, Luis N. Saldana–Roman, Saldana & Carvajal, Ivan M. Fernandez, Ivan M. Fernandez Law Office, San Juan, PR, Israel Roldan–Gonzalez, Aguadilla, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, Senior District Judge.

Pending before the Court is Co-defendants Banco Popular's and Javier Otero–Colón's motion for summary judgment (Docket # 52), duly accompanied by a statement of uncontested material facts (Docket # 51). Co-defendant Doris L. Román–Milán moved to join Co-defendants Banco Popular's and Javier Otero–Colón's motion for summary judgment (Docket # 53). Plaintiff filed a belated opposition (Docket # 58).[1] Co-defendants Banco Popular and Javier–Otero then replied to that opposition (Dockets ## 59–62). After carefully examining the parties' arguments, the case record and the applicable law, Co-defendants Banco Popular's, Javier Otero–Colón's and Doris Román–Milán's motions will be **GRANTED.**

### Standard of Review

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim ... is asserted ... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *Ramírez Rodríguez v. Boehringer Ingelheim,* 425 F.3d 67, 77 (1st Cir.2005).

"A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party' and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" *Depoutout v. Raffaelly,* 424 F.3d 112, 116 (1st Cir.2005) (quoting from *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990)). By like token, "'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." *Rojas–Ithier v. Sociedad Española de Auxilio Mutuo,* 394 F.3d 40, 42–43 (1st Cir.2005) (citations omitted). Therefore, there is a trial-worthy issue when the "evidence is such that there is a factual controversy pertaining to an issue that may affect the outcome of the litigation under the governing law, and the evidence is sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." *Id.* (citations omitted).

In addition, the Court may not weigh the evidence. *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.,* 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (citing *Greenburg v. P.R. Mar. Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may

---

1. Per Plaintiff's request for a thirty-day extension of time to oppose the motion for summary judgment (Docket # 56), the Court granted Plaintiff until July 1, 2005 to file the opposition (Docket # 57). Plaintiff submitted his opposition on July 5, 2005 (Docket # 58).

not adopt the inference least favorable to the non-moving party. *Id* at 684.

Once the movant has established that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). That requires providing the Court with more than conclusory allegations, improbable inferences, and unsupported speculation. *See, Hadfield v. McDonough*, 407 F.3d 11, 15 (1st Cir.2005) (citing *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)). Nor will "effusive rhetoric" and "optimistic surmise" suffice for the non-movant to establish a genuine issue of material fact. *Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir.1997). The 'party opposing summary judgement must present definite, competent evidence to rebut the motion.' *Méndez–Laboy v. Abbott Lab.*, 424 F.3d 35, 37 (1st Cir.2005) (*quoting* from *Maldonado–Denis v. Castillo Rodríguez*, 23 F.3d 576, 581 (1st Cir.1994)). "The nonmovant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trialworthy issue ... Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States*, 924 F.2d 355, 358 (1st Cir.1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina–Muñoz*, 896 F.2d at 8, (*quoting Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.").

Local Rule 56(b), moreover, requires the moving party to file annexed to the motion "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." The non-movant has a corresponding obligation to file with its opposition a statement admitting, denying, or qualifying the facts "by reference to each numbered paragraph of the moving party's statement of material facts", supporting each denial or qualification of the movant's material facts with a citation to the record. Local Rule 56(c). If the non-movant fails to properly controvert the movant's statement, all the material facts set forth therein "shall be deemed to be admitted." Local Rule 56(e); *Cosme–Rosado v. Serrano-Rodriguez*, 360 F.3d 42 (1st Cir.2004). This is the so-called "anti-ferret rule." See, e.g., *Orbi, S.A. v. Calvesbert & Brown*, 20 F.Supp.2d 289, 291 (D.P.R.1998). While failure to comply with this rule does not automatically warrant the granting of summary judgment, "it launches the nonmovant's case down the road toward an early dismissal." *Tavárez v. Champion Prods., Inc.*, 903 F.Supp. 268, 270 (D.P.R.1995).

In a recent opinion, the First Circuit reaffirmed the validity of the well-known anti-ferret rule previously codified in Local Rule 311.12. *Cosme–Rosado*, 360 F.3d 42, 45 (noting that "parties ignore [it] at their peril") (*quoting Ruiz Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir.2000) (citations omitted)). As such, the Court is not required to "ferret through the record" lurking for facts that may favor the parties when those facts were not proffered as required by Local Rule 56(c). *Morales v. Orssleff's Eftf,* 246 F.3d 32, 33 (1st Cir.2001).

The moving Co-defendants have complied with Local Rule 56(b) and filed a statement of material facts (Docket # 51–

1, adopted by Co-defendant Román–Milán at Docket # 53). Plaintiff, however, did not file the opposing statement of facts. Although their opposition to the motion for summary judgment mentions some "facts", there is no citation to supporting evidence and any facts alleged in the opposition are not in the form required by Local Rule 56(b). Accordingly, the Court will deem admitted any and all facts in Co-defendants' statement that are supported by the record (*see* Local Rule 56(e)).

**Procedural and Factual Background**

On January 13, 2002, Co-defendant Román–Milán made a purchase at the Payless Shoe Store in the Mayagüez Mall store (Docket # 51, SUF # 5). In order to pay for her purchase, she gave the cashier her Banco Popular ATM card and keyed in her pin number (Docket # 54, Ex.2). The only two persons in the area were Co-defendant and the cashier (Id). The cashier made the transaction, and then handed Co-defendant Román–Milán her purchase receipt and an ATM card. After leaving the Payless store, Co-defendant Román–Milán attempted to make two other purchases with her ATM card in two different stores (Docket # 51, SUF # 6). Both attempts failed because her ATM card was not accepted (Id).

Two days later, on January 15, 2002, Co-defendant Román–Milán went to a Banco Popular branch, thinking her ATM card was damaged (Docket # 51, SUF # 7). There she was informed that the ATM card was not hers (Id). Both cards, Co-defendant Román–Milán's and the other card, were cancelled (Docket # 51, SUF # 9). Co-defendant Román–Milán was then given an account statement (Docket # 51, SUF # 10). Upon reviewing it, Co-defendant Román–Milán realized that there were two unauthorized withdrawals (Id). Both withdrawals were for $ 500.00 and had taken place on January 13 and January 14, 2002, respectively (Docket # 51, SUF# 10–11). Co-defendant Román–Milán filed a claim for fraud with the bank and a complaint with the police department (Docket # 51, SUF # 12). On January 18, Co-defendant Román–Milán again visited the Payless Store and found that the cashier was the same as the one from January 13 (Docket # 51, SUF # 13). She made another purchase and upon comparison of the purchase receipts of January 13 and January 18 found that the same employee's name appeared in both: Aly. (Docket # 51, SUF# 13–14). That was the name that was assigned to Plaintiff for when he worked the cash register (*see*, Docket # 51, SUF # 16).

Meanwhile, Co-defendant Román–Milán's fraud claim was referred for investigation to Co-defendant Otero–Colón, a fraud investigator in the security division of Banco Popular (Docket # 51, SUF # 17). Co-defendant Otero–Colón examined the ATM reports for Co-defendant Román–Milán's account, interviewed Co-defendant Román–Milán, viewed the video taken at an ATM machine where one of the unauthorized withdrawals had taken place, and found that the description given by Co-defendant Román–Milán of the cashier matched that of the person in the video (Docket # 51, SUF # 18).

Then, on March 19, 2002, Co-defendant Otero–Colón arranged to have a meeting with Plaintiff in one of Banco Popular's branches (Docket # 51, SUF # 20). The meeting took place in an open cubicle within the branch and lasted approximately one hour and fifteen minutes (Docket # 51, SUF# 21, 31). Present were: Plaintiff, Co-defendant Otero–Colón and another, unidentified, Banco Popular employee (Docket # 51, SUF # 20). During the course of the meeting, Co-defendant Otero–Colón told Plaintiff that his file of the investigation of Co-defendant Román–Mi-

lán's fraud claim would be handed over to the police and that the only way to settle the claim would be for Plaintiff to reimburse the money (Docket # 51, SUF # 22). Although Co-defendant Otero–Colón employed a normal tone of voice during the meeting and was not physically violent, it appears that upon Plaintiff's statement that he wanted to leave, Co-defendant Otero–Colón threatened him with pressing charges if he walked out[2] (Docket # 51, SUF#23–27). Plaintiff thus stayed and called his attorney, Martín Aguilar (Docket # 51, SUF # 29). Some time after Mr. Aguilar arrived, he and Plaintiff left and, as they were exiting, Co-defendant Otero–Colón screamed at Plaintiff that he was going to put him in jail and that he should ignore his attorney[3] (Docket # 51, SUF # 30).

Then, on April 4, Co-defendants Román–Milán and Otero–Colón gave sworn statements to the district attorney's office regarding the unauthorized use of Co-defendant Román–Milán's ATM card after she had made the January 13 purchase at the Payless store. The police later filled out an incident report in which Co-defendant Román–Milán appears as the complainant, Co-defendant Otero–Colón as the witness, and Plaintiff as the delinquent (Docket # 54, Ex. 7). Per the police report, charges were filed against Plaintiff for aggravated unlawful appropriation and illegal use of credit and debit cards (*see* 33 P.R. Laws Ann. §§ 4272 & 4556 (repealed 2004)), probable cause for arrest was found, and bail was set at $ 400 (*Id*). However, on a preliminary hearing held on June 2002, a judge determined that there was no probable cause to prosecute Plaintiff (Docket # 54, Ex. 12). By August 2002, all charges were dropped (*see* Docket # 54, Ex. 13). While the criminal case progressed, Plaintiff tendered his letter of resignation to Payless Shoe Store and moved to Florida (Docket # 51, SUF# 40–41). There he worked at various places for a little over a year and a half, at salaries ranging from $6.50 to $ 10.00 an hour and is currently unemployed (Docket # 51, SUF# 44–47).

Plaintiff then filed this complaint against Banco Popular, Otero–Colón, Román–Milán, Payless Shoe Stores, and Juan Vázquez, a Payless employee. Premised on diversity jurisdiction, Plaintiff brought this action requesting $3,000,000.00 in damages. He alleged slander, malicious prosecution, and intentional infliction of emotional distress. As to the first count, slander, Plaintiff alleged that Otero–Colón, Román–Milán, and Juan Vázquez had called him a thief and had therefore tarnished his reputation in "his community and beyond", which in turn had forced him to move to Florida (Docket # 18, ¶¶ 10–13). Plaintiff mentions all defendants in his second count, that of malicious prosecution, though he specifically attributes to Román–Milán, Otero–Colón, and Banco Popular the filing of affidavits in connection with the criminal case that contained false information (Docket # 18, ¶¶ 12–17). Finally, Plaintiff's third count, of intentional infliction of emotional distress, alleges that Otero–Colón, Román–Milán, and Vázquez, by their acts of malicious prosecution and slander, intentionally or recklessly inflicted emotional distress on Plaintiff (Docket # 18 ¶¶ 18–23).

---

**2.** Co-defendants deny that Otero–Colón uttered any such threat, however, for summary judgment purposes only, they are willing to have it deemed an uncontested fact. *See* SUF # 23, n. 1.

**3.** Once again, Co-defendants deny that such an event took place, however, for summary judgment purposes only, they set it forth as an uncontested fact. *See* SUF # 30, n. 2.

### Applicable Law and Analysis[4]

#### Slander

In Puerto Rico the tort of defamation can be either intentional or negligent, depending on whether the defamed is a private or public figure, and can come in the form of slander or libel. *See generally, Ojeda v. El Vocero de P.R.,* 137 DPR 315 (1994). Libel is defamation that comes in the written form. *Sociedad de Gananciales v. El Vocero de P.R.,* 135 DPR 122, 126 (1994). Slander, on the other hand, takes place when the defamation is oral and, as with libel, all other elements of the defamation claim must be present. *Ojeda,* 137 DPR at p. 326. Whether slander or libel, the sources of protection against defamation in Puerto Rico law are three: the Libel and Slander Act of 1902, 32 P.R. Laws Ann. § 3242, *et seq;* Article 1802 of the Puerto Rico Civil Code, 33 P.R. Laws Ann. § 5141; and Art. II, sec. 8 of the Puerto Rico Constitution. *See Aponte v. Calderón,* 284 F.3d 184, 197 (2002), *Acevedo v. Western Digital Caribe, Inc.,* 140 DPR 452, 460 (1996), *Ojeda,* 137 DPR at p. 326. The Constitution of Puerto Rico serves as the underlying basis for defamation claims, which are litigated in accordance with the provisions of both the Libel and Slander Act and Article 1802 of the Civil Code. *Acevedo, supra.*

A private citizen who seeks redress for defamation, whether written or oral, must prove the following: (1) that information that is false and defamatory was (2) negligently published, with the result that (3) the defamed person suffered real damages. *Pérez Rosado v. El Vocero de P.R.,* 149 DPR 427, 442 (1999). Necessarily, the information published must be injurious. *See, Porto v. Bentley,* 132 DPR 331, 345 n. 11 (1992) (referring to 32 P.R. Laws Ann. § 3142, which requires that the libelous publication tend to subject the person to "public hatred or contempt, or to deprive him of the benefits of public confidence and social intercourse, or to injure him in his business, or in any other way to throw discredit, contempt of dishonor upon him"). Moreover, as stated above, the defamatory information must be false; that the published information is true is a defense available to a defendant in any type of defamation claim. *Villanueva v. Hernández Class,* 128 DPR 618, 643, 1991 WL 735303 (1991). With regards to intention, when the defamed is a private citizen, as opposed to a public figure, he or she may rest on the defendant having acted negligently, instead of with actual malice. *Id.* at p. 642. As to publication, that element is satisfied when the false and defamatory information has been communicated to a third party, that is, someone other than the speaker and the defamed. *See, Porto,* 132 DPR at p. 346–47. Finally, and with regards to damages, the Court notes that, as stated by the Puerto Rico Supreme Court, the purpose of a defamation claim is to provide a compensation for the damage inflicted on the reputation and good name of the injured party. *Sociedad de Gananciales v. El Vocero de P.R.,* 135 DPR 122, 127, 1994 WL 909249 (1994).

Even when all of the requirements of a claim for defamation are present, a defendant may avoid liability by establishing the applicability of a privilege. A communication is privileged when, had it not been for the circumstances under which it was uttered or published, it would be considered defamatory and actionable. *Porto,* 132 DPR at p. 353. The Libel and Slander Act recognizes the existence of a privilege

---

4. This being an action brought pursuant to diversity jurisdiction, we examine the law of Puerto Rico. *See, Marcano Rivera v. Turabo Medical Partnership,* 415 F.3d 162, 167 (2005).

that protects statements made in the course of a judicial or official proceeding, 32 P.R. Laws. Ann. § 3144. The purpose of that privilege is to further the administration of justice and to protect the generalized and unburdened access to the courts. *Giménez Alvarez v. Silén Maldonado*, 131 DPR 91, 99, 1992 WL 754904 (1992) (holding, *inter alia*, that the allegations contained in a civil complaint cannot form the basis for a defamation claim). Therefore, the immunity afforded by this privilege protects statements made by judges, lawyers, and witnesses, and encompasses every expression made with regards to the controversy, whether it be in the pleadings, in affidavits, or in open court. *Id.*

■ As per the uncontested facts, there is no actionable slander claim against any of the defendants. That Otero–Colón told Plaintiff that the only way to settle the claim would be to reimburse the money he took (see Docket # 51, SUF # 22) cannot be the basis for a slander suit. The statement was made to the Plaintiff himself, by a person speaking within a cubicle and in a normal tone of voice (see Docket # 51, SUF# 21, 26). Absent communication to another party, there can be no publication and, therefore, no defamation. Although Plaintiff seeks to counter this by alleging in his opposition to summary judgment that "many people heard this slanderous statement" (Docket # 58, p. 2), he has not provided any evidentiary support for such a contention.

■ Plaintiff also alleges that Co-defendant Otero–Colón screamed at him as he was exiting the bank's branch that he would place Plaintiff in jail and that Plaintiff should not listen to his lawyer (Docket # 51, SUF # 30). That, however, is simply not defamatory. The first part is a statement of intent by Co-defendant Otero–Colón, bluntly put, a threat. It does not speak of Plaintiff's character nor is it injurious. It is merely Co-defendant Otero–Colón's promise, so to speak, to perform a certain action. As such, it is not subject to be held true or false, but as with any promise, fulfilled or not. Similarly, the second part of the statement, that Plaintiff should not listen to his lawyer, can be neither true nor false, nor defamatory or otherwise. It is a piece of advice, a warning of sorts; it may be bad or ill intentioned but it cannot be used as a basis for a defamation claim. *See generally, Garib Bazain v. Clavell*, 135 DPR 475 (1994) (discussing types of statements, such as opinions, that cannot be deemed defamatory because falsity is difficult, if not impossible, to prove).

■ As for Co-defendants Otero–Colón's and Román–Milán's statements to the district attorney or in Court, these are privileged and thus not subject to a defamation suit. That they may be false or defamatory need not concern us, as those statements are protected by the privilege. *See, Giménez Alvarez, supra.*

Accordingly, we find that the uncontested and unopposed facts before us show that Co-defendants Banco Popular, Otero–Colón, and Román–Milán did not in any way defame Plaintiff. The claim for slander will thus be **DISMISSED WITH PREJUDICE.**

**Malicious Prosecution**

■ Malicious prosecution is the unjustified use of legal proceedings; there is malicious prosecution when a criminal action is filed maliciously and without probable cause, and such an action provokes damages. *García Gómez v. Estado*, 2005 TSPR 14, * 3, 2005 WL 536113 (2005). A malicious prosecution claim is brought under the auspices of Article 1802 of the Puerto Rico Civil Code and requires that the plaintiff aver and prove: (1) that he or

she has been the subject of a criminal complaint filed by the defendant, (2) that the criminal case ended favorably for plaintiff, (3) that the case was instigated maliciously and without probable cause, and (4) that plaintiff suffered damages as a result. *Ayala v. San Juan Racing Corp.,* 112 DPR 804, 811–12 (1982). *see also, González Rucci v. U.S. I.N.S.,* 405 F.3d 45, 49 (1st Cir.2005). Generally speaking, malicious prosecution suits are not favored by the courts because they run counter to the goal of having citizens cooperate with the state in fighting crime. *Parrilla Baez v. Airport Catering Serv.,* 133 DPR 263, 273, 1993 WL 839985 (1993).

▇▇▇▇ A defendant does not "instigate a criminal case" as required to succeed in a malicious prosecution claim merely because he or she provides information to a police officer or a district attorney about a certain set of facts. *Raldiris v. Levitt,* 103 DPR 778, 782, 1975 WL 38787 (1975). Nor does a statement to such an officer based on a reasonable belief provide the basis for imposing liability. *Id.* Malice, in cases of malicious prosecution, is not presumed; it is up to the plaintiff to prove that the defendant acted maliciously and without probable cause. *Id.*

▇▇▇ Where a defendant files a criminal complaint and it is taken to a district attorney, who decides to file charges, and later to a judge, who finds probable cause, the complainant is not liable for malicious prosecution. *See, Parrilla Baez,* at p. 276. In such a case, the decision to prosecute or file charges is attributed to the authorities on the basis of their own evaluation of the facts. *Id.*

▇▇▇ The case before us is virtually indistinguishable from the situation outlined above. Co-defendant Román–Milán filed a criminal complaint in which Plaintiff was identified as the delinquent (*see* Docket 54, Ex. 7). Otero–Colón was a witness (*see Id* ). Both also submitted affidavits to the district attorney's office in connection with the same facts: Román–Milán's ATM card being switched for another after a purchase in a Payless store where Plaintiff was the cashier and the subsequent unauthorized withdrawals out of Román–Milán's account (see Docket # 54, Exs.# 2, 5). After providing the police with the relevant information, it was the district attorney who decided to press charges (*see,* Docket # 54, Ex.7). Moreover, the case was taken before a judge, who determined there was probable cause to arrest Plaintiff for the crimes charged and set bail accordingly (*see, Id).* Thus, the filing of the criminal case can be attributed to the authorities, who made the decision after their own evaluation. Under these circumstances, none of the moving Co-defendants can be deemed liable for malicious prosecution. Accordingly, the malicious prosecution claim against Co-defendants Banco Popular, Román–Milán, and Otero–Colón will be **DISMISSED WITH PREJUDICE.**

**False Imprisonment/ Illegal Deprivation of Liberty**

Although the complaint does not contain a separate count for this cause of action, in the slander count, Plaintiff alleges that Otero–Colón illegally detained him in the Banco Popular branch where they met (Docket # 54, ¶ 9). Moreover, Co-defendants Banco Popular and Otero–Colón have fully briefed this issue (Docket # 52) and Plaintiff, in his "Memorandum of Law in Opposition" [5] has, predictably, opposed

---

**5.** It bears mentioning that for a "memorandum of law", Plaintiff's opposition is remarkably devoid of citations to cases in support of his contentions.

Co-defendants' request for dismissal of this claim.

Only a brief discussion of this point is necessary. A cause of action for false imprisonment or illegal deprivation of liberty "accrues every time that a 'person, whether or not a law enforcement officer, may by himself or through another one unlawfully detain or cause the unlawful detention of another person'". *Santana v. U.S.*, 919 F.Supp. 558, 563 (quoting *Ayala v. San Juan Racing Corp.*, 112 DPR at p. 813). The elements of the claim are: (1) intentional restriction of a person's freedom of movement, (2) that the detained person be conscious of the detention and that he or she not have consented, and (3) that the detention cause damages. *Castro Cotto v. Tiendas Pitusa*, 2003 TSPR 101, p. 3, 2003 WL 21355210.

A cursory review of the facts is enough to determine that there was no illegal deprivation of liberty in this case. First, Plaintiff was not restricted in his movement. He was in an open cubicle in the bank (Docket # 51, SUF # 21). He had gone there out of his own volition (Docket # 51, SUF # 19). His attempts to leave were not curtailed by Defendants; indeed, he did not attempt to leave (Docket # 51, SUF # 24). That Plaintiff decided not to leave because he heeded Co-defendant Otero–Colón's alleged threat that he would press charges if he left the meeting does not turn said meeting into an illegal detention. Such a statement by Otero–Colón did not obstruct Plaintiff's capacity to leave at any time. Having failed to present any facts that could give rise to such a claim, Plaintiff's claim for false imprisonment will be **DISMISSED WITH PREJUDICE.**

### Intentional Infliction of Emotional Distress and Remaining Co-defendants

Plaintiff also included a claim in the complaint for intentional infliction of emotional distress, premised on Defendants' alleged slander, malicious prosecution, and false imprisonment. Co-defendants Banco Popular, Otero–Colón, and Román–Milán have failed to argue for dismissal of this claim. However, it appears that there is no evidence to support this claim. Accordingly, Plaintiffs is **ORDERED** to show cause by **March 29, 2006** why this claim should not be dismissed with prejudice. As for Co-defendants Juan Vázquez and Payless Shoe Store, they have failed to move for summary judgment. Nonetheless, in light of this Opinion and Order, Plaintiff is **ORDERED** to show cause by **March 29, 2006** why the claims against said Co-defendants should not be dismissed with prejudice. **Failure to comply with this order will result in the dismissal of the complaint with prejudice.**

### Conclusion

For the reasons set forth above, Plaintiff's claims of slander, malicious prosecution, and false imprisonment against Co-defendants Román–Milán, Banco Popular, and Otero–Colón are hereby **DISMISSED WITH PREJUDICE.** Partial Judgment shall be entered accordingly.

**SO ORDERED.**