# United States Court of Appeals
## For the First Circuit

No. 03-2385

DARLENE I. ROJAS-ITHIER, ET AL.,
Plaintiffs-Appellees,

v.

SOCIEDAD ESPANOLA de AUXILIO MUTUO y
BENEFICIENCIA de PUERTO RICO,
Defendant and Third Party Plaintiff-Appellant,

v.

SINDICATO de ASEGURADORES de IMPERICIA MEDICO
HOSPITALARIA; CECILIA MENDEZ-MARTIR,
Third Party Defendants-Appellees

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Jay A. Garcia-Gregory, U.S. District Judge]

---

Before
Boudin, Chief Judge,
Howard, Circuit Judge,
Carter,[*] Senior District Judge.

---

Dennis J. Cruz Perez for Third Party Plaintiff-Appellant.
Maria Z. Trigo-Ferraiuoli, with whom Ramonita Dieppa Gonzales, was on brief for Third Party Defendants-Appellees.

---

January 6, 2005

---

[*]Of the District of Maine, sitting by designation.

**CARTER, <u>Senior District Judge</u>.** Defendant-Third Party Plaintiff Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico (hereinafter "Hospital") appeals from an order of the United States District Court for the District of Puerto Rico granting third party defendant Dr. Celia Mendez Martir's Motion for Summary Judgment. Finding no error, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiffs Darlene Rojas-Ithier and Victor Varela Teron initiated this medical malpractice action following the death of their infant son.

Rojas was admitted to the Hospital on March 3, 2000, after a series of pregnancy complications, including a threatened abortion at twelve weeks' gestation, first trimester bleeding, a urinary tract infection, and premature rupture of membranes. During this hospital stay, Rojas was ordered to remain in bed by her obstetrician, Dr. Mendez. At approximately 2:00 AM on April 26, 2000, twenty-nine weeks into the pregnancy, Dr. Mendez was notified at home by the attending nurses that Rojas was having gas pain and abdominal pain. Although Dr. Mendez ordered the hospital staff to keep Rojas under strict bed rest, Rojas moved from her bed to the adjacent bathroom in an effort to relieve her gas pains.

-2-

While in the bathroom, Rojas delivered her baby into the toilet. The baby boy remained in the toilet for an undetermined period of time before being discovered. Thereafter, a neonatologist attempted to resuscitate the baby, but his efforts ultimately proved unsuccessful. Approximately eleven hours after the live birth, the baby was pronounced dead.

Plaintiffs brought this diversity suit[1] against the Hospital on February 6, 2002. Defendant Hospital subsequently brought a third party complaint against Dr. Mendez and her insurance carrier, Sindicato de Aseguradores de Impericia Medico Hospitalaria. The district court, finding no genuine issues of material fact, granted Dr. Mendez's Motion for Summary Judgment.[2] This appeal followed.

## II. STANDARD OF REVIEW

We review the grant of summary judgment <u>de novo</u>, applying the same standard as did the district court. <u>Leon</u> v. <u>Municipality of San Juan</u>, 320 F.3d 69, 71 (1st Cir. 2003).

---

[1]At the time this suit was commenced, Plaintiffs were residents of the State of Florida.

[2]While Dr. Mendez's Motion for Summary Judgment was pending before the district court, Plaintiffs and the Hospital settled their dispute. The Hospital filed a motion for voluntary dismissal without prejudice of all claims, including its third party complaint against Dr. Mendez, following the settlement between the Hospital and Plaintiffs.

The objective of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001) (citing McCarthy v. Northeast Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)). "A trialworthy issue exists if the evidence is such that there is a factual controversy pertaining to an issue that may affect the outcome of the litigation under the governing law, and the evidence is 'sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side.'" De-Jesus-Adorno v. Browning Ferris Indus., 160 F.3d 839, 841-42 (1st

Cir. 1998) (quoting Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995)).

The Court views the record on summary judgment in the light most favorable to the nonmovant. See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 50 (1st Cir. 2000). However, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has presented evidence of the absence of a genuine issue, the nonmoving party must respond by "placing at least one material fact into dispute." FDIC v. Anchor Props., 13 F.3d 27, 30 (1st Cir. 1994) (citing Darr v. Muratore, 8 F.3d 854, 859 (1st Cir. 1993)).

## III. DISCUSSION

Because this is a diversity action, the substantive law of Puerto Rico applies. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 92 (1938); Daniels-Recio v. Hospital del Maestro, 109 F.3d 88, 90 (1st Cir. 1997).

The Puerto Rico Civil Code provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." 31

-5-

P.R. Laws Ann. § 5141. Three elements comprise a prima facie case of medical malpractice under Puerto Rico law. To prevail against a doctor, a party must establish (1) the duty owed; (2) an act or omission transgressing that duty; and (3) a sufficient causal nexus between the breach and the harm. Cortes-Irizarry v. Corporacion Insular de Seguros, 111 F.3d 184, 189 (1st Cir. 1997); Lama v. Borras, 16 F.3d 473, 478 (1st Cir. 1994); Medina Santiago v. Velez, 120 P.R. Dec. 380, 385 (1988).

Puerto Rico law holds physicians to a national standard of care.[3] "[B]ecause Puerto Rico law presumes that physicians exercise reasonable care, a plaintiff bent on establishing a breach of a physician's duty of care ordinarily must adduce expert testimony to limn the minimum acceptable standard and confirm the defendant doctor's failure to meet it." Cortes-Irizarry, 111 F.3d at 190. Without the assistance of expert testimony, a trier of fact is rarely able to determine the applicable standard of care in the medical profession. Rolon-Alvarado v. Municipality of San Juan, 1 F.3d 74, 78 (1st Cir. 1993). Similarly, a factfinder normally cannot find causation

_____

[3]The Puerto Rico Supreme Court has described this national standard as "[t]hat [level of care] which, recognizing the modern means of communication and education, ... meets the professional requirements generally acknowledged by the medical profession." Oliveros v. Abreu, 101 P.R. Dec. 209, 226 (1973).

without the assistance of expert testimony to clarify complex medical and scientific issues that are more prevalent in medical malpractice cases than in standard negligence cases.  <u>Lama</u>, 16 F.3d at 478.

To bring into question an element of the Hospital's prima facie case, Dr. Mendez submitted two expert opinions to the district court, both of which attributed the infant's death solely to the negligence of the Hospital and its nurses.  It is undisputed that the Hospital has failed to furnish a medical expert opinion suggesting that Dr. Mendez breached the standard of care.  Instead, the Hospital first urges us to conclude that because of discrepancies between the nurses' notes and Dr. Mendez's notes recounting the events of April 26, 2000, a genuine issue of material fact exists.  The existence of contradictions, standing alone, however, is not enough to preclude summary judgment.  The Hospital fails to establish any nexus between the inconsistencies in the notes and the resulting death of the infant.  Accordingly, we do not find any alleged discrepancies in the notes sufficient to create an issue of material fact.

Realizing its predicament after failing to file any expert opinions with the district court to support its claims of negligent conduct by Dr. Mendez, the Hospital next asks us to find that Dr. Mendez's conduct alone was so egregious that an

expert is not necessary to find such a nexus.[4]  We decline this invitation.  The Hospital offers no support for its claim of egregious conduct other than its own unsubstantiated allegations and theories.  It is a long standing principle in this Circuit that bald assertions and unsupportable conclusions are not enough to create a genuine issue of material fact.  See, e.g., Aulson v. Blanchard, 83 F.3d 1, 2 (1st Cir. 1996).

 Finally, Appellant challenges the expert opinions offered by Dr. Mendez.  "The Hospital submits that a plain reading by the court of the experts [sic] reports suffices to conclude that they are fundamentally written around the experts' interpretation and recreation of fragments of depositions containing no specific references either to the medical record."  App. Br. at 15.  A thorough review of the record by this Court clearly indicates that both experts retained by Dr. Mendez, in formulating their expert opinions, carefully examined the hospital records and available depositions in the case.  We find no merit to Appellant's argument.  The appropriate method for the Hospital to

---

[4]Citing to Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the Hospital contends that to create a genuine issue of material fact, it only need produce evidence that would allow a reasonable jury to return a verdict in its favor.  Appellant's problem is that Anderson's requirement could be met in a libel case without expert evidence; by contrast, under Puerto Rico law, appellant did need an expert to establish medical malpractice, given the state of the record in this case.

challenge these expert reports is not through legal argument, but by retaining its own medical expert and submitting to the district court an expert opinion in accordance with Puerto Rico law. This Court will not on its own create a dispute of medical facts when the Hospital had an appropriate avenue in which to do so during the discovery process in the district court.

**IV. CONCLUSION**

Dr. Mendez, through the submission of two expert opinions, presented evidence of the absence of a genuine factual issue central to the Hospital's case. The Hospital failed to respond with appropriate expert evidence and failed to adduce support for its claim that Dr. Mendez breached the standard of care. Without such evidence, the Hospital cannot establish an element of its prima facie case. As such, the Hospital fails to meet its burden of showing that there is a fact issue requiring trial. Because we affirm the district court's grant of summary judgment in favor of Dr. Mendez, the Hospital's arguments addressing the appropriateness of a dismissal with prejudice are moot.

**<u>Affirmed.</u>**