WALTER BENSON vs. MASSACHUSETTS GENERAL HOSPITAL.

No. 98-P-1102.

Suffolk. February 23, 2000. - June 30, 2000.

Present: LAURENCE, SMITH, & GILLERMAN, JJ.

*Practice, Civil,* Summary judgment. *Medical Malpractice,* Consent to medical treatment.

In a medical malpractice action, the record of summary judgment proceedings demonstrated that there was no reasonable expectation that the plaintiff could prove at trial the elements of his lack of informed consent claim, with respect to either proposed treatment or the option of nontreatment. [531-534]

CIVIL ACTION commenced in the Superior Court Department on July 3, 1995.

The case was heard by *Peter M. Lauriat,* J., on a motion for summary judgment.

*James M. Caramanica* for the plaintiff.

*James S. Hamrock, Jr.,* for the defendant.

LAURENCE, J. The plaintiff, Walter Benson, appeals from an order of the Superior Court allowing the motion of the defendant, Massachusetts General Hospital (MGH), for summary judgment in a medical malpractice action.[1] The alleged malpractice stemmed from exploratory surgery conducted at MGH on July 5, 1992. The summary judgment record reveals that Benson sought treatment for stomach pains at the MGH emergency room on July 4, 1992. X-rays taken on that and the following day indicated a small bowel obstruction. On July 5, 1992, two MGH doctors conducted an exploratory laparotomy surgery but found no bowel obstruction, and Benson's abdominal pain subsequently resolved. Two consent forms —

---

[1]Benson also sued his treating surgeon individually, but the complaint was dismissed as to that party because of insufficient service of process.

one for the surgery and one for its accompanying anesthesia — appear in the record, each stating that the physician had explained the nature, benefits and risks of the procedure to be undergone and of alternative approaches. Each form bears Benson's signature next to the words "Dr. [ ] has explained the above to me and I consent to the procedure."

In his complaint, Benson alleged that MGH was negligent in treating him and that it failed to seek or obtain his informed consent, thereby causing him to undergo needless surgery.[2] Pursuant to G. L. c. 231, § 60B, a medical malpractice tribunal was convened on Benson's complaint, but he neither appeared nor submitted an offer of proof at the appointed hearing date. The tribunal thereafter found for the defendant, and Benson maintained his action by posting a bond.

The plaintiff argued both below and on appeal that no one at MGH made any disclosures to him whatsoever regarding the need for, or the risks of, treatment. Following completion of discovery, MGH moved for summary judgment on both the negligence and the lack of informed consent counts. The motion judge allowed MGH's motion as to both counts. Benson appeals only from the ruling on his lack of informed consent claim.

MGH's summary judgment papers stressed the explanatory consent forms bearing Benson's signatures (which he acknowledged were his); the fact that Benson's interrogatory answers and deposition testimony averred only to his having no memory of being given any information or of signing anything; and his failure to proffer any expert or even anticipated expert evidence with respect to the nature of the explanation of the risks and benefits that a health care institution would have been expected to provide in the circumstances. See *Harnish* v. *Children's Hosp. Med. Center*, 387 Mass. 152, 155-158 (1982). In the face of this apparent demonstration that there was no evidence to support Benson's claim of failure of disclosure and absence of informed consent, it became Benson's burden, pursuant to Mass. R.Civ.P. 56(e), 365 Mass. 825 (1974), to "designate 'specific facts showing that there is a genuine issue for trial.' " *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 714 (1991),

---

[2]The plaintiff also asserted a claim against Massachusetts General Hospital for its negligent training and supervision of the treating physician. However, this claim seems to have been abandoned by the plaintiff in the course of pretrial proceedings. See note 6, *infra*.

quoting from *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 324 (1986). See *Marenghi* v. *Mobil Oil Corp.*, 416 Mass. 643, 646-647 (1993).

Benson did not do so, however, but merely asserted (in his memorandum in opposition to the defendant's motion for summary judgment, but not in any affidavit) that MGH never told him anything, but rather precipitately put him under the knife without obtaining his informed consent.[3] Such "bare assertions and conclusions regarding . . . [his] understandings, beliefs, and assumptions are not enough to withstand a well-pleaded motion for summary judgment." *Polaroid Corp.* v. *Rollins Envtl. Servs. (NJ), Inc.*, 416 Mass. 684, 696 (1993). Benson's unsubstantiated averments constituted "mere assertions of disputed facts," *LaLonde* v. *Eissner*, 405 Mass. 207, 209 (1989), invited a decision by the trier of fact resting on speculation, and did not represent a basis on which "a fair minded jury could return a verdict for the plaintiff." *Anderson* v. *Liberty Lobby,*

---

[3]This conclusory assertion by Benson was implicitly deemed ineffective by the motion judge. It went well beyond Benson's interrogatory answers and deposition testimony, which had only stated that he had no memory of ever being told about the procedures or giving his consent thereto. Cf. *Wagner* v. *Lextrox Corp.*, 4 Mass. App. Ct. 815, 816 (1976); *O'Brien* v. *Analog Devices, Inc.*, 34 Mass. App. Ct. 905, 906 (1993) (summary judgment may not be avoided by vague, non-specific and general statements, and the non-movant may not create a disputed issue of fact by the expedient of contradicting statements previously made under oath during discovery). To the extent he cannot remember what happened and has no other admissible evidence relating thereto, his allegation regarding MGH's purported nondisclosure cannot be based on personal knowledge and amounts to speculative averment based upon information and belief insufficient to defeat a well-pleaded summary judgment motion. See *Madsen* v. *Erwin*, 395 Mass. 715, 721 (1985), and cases cited. Benson's attempt to bolster his opposition by reference to the deposition testimony of his daughter and son-in-law, who had been with him at various (but not all) times while he was at MGH, was also unavailing; they similarly reported only that they could not remember seeing or hearing Benson being informed about or giving consent for the procedures. We note, additionally, that Benson failed to avail himself of the opportunity to present an adequate factual opposition by invoking Mass.R.Civ.P. 56(f), 365 Mass. 825 (1974). In particular, he made no effort to present facts indicating that the signatures on the consent forms were not his or that he was suffering from any condition that would have rendered him physically or mentally incapable of giving his informed consent at the time. The record does reflect his imperfect recollection of events, as in his deposition denial that he was ever x-rayed before being operated on (a fact clearly established by hospital records) and his inconsistent responses to questions inquiring whether he came to the hospital alone or accompanied by others.

*Inc.*, 477 U.S. 242, 252 (1986). Assessed in its totality, the summary judgment record "demonstrate[d] that there [was] no reasonable expectation," *Tate* v. *Department of Mental Health*, 419 Mass. 356, 360 (1995), that Benson could prove the essential elements of his lack of informed consent claim at trial. Compare *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 809 (1991).

According Benson the indulgence due the opponent of a summary judgment motion, by construing the evidence in his favor, see *LaLonde* v. *Eissner*, 405 Mass. at 209; *Correllas* v. *Viveiros*, 410 Mass. 314, 316-317 (1991), we could draw from his complaint and deposition testimony the inchoate contention that he was not informed of the option of doing nothing, i.e., "the likely result of no treatment," which can constitute material information that must be revealed by a physician to a patient, see *Harnish* v. *Children's Hosp. Med. Center*, 387 Mass. at 156; *Feeley* v. *Baer*, 424 Mass. 875, 877 n.3 (1997), but which was not explicitly mentioned in the consent forms relied on by MGH.[4] Even under that view of the matter, however, Benson could not successfully resist summary judgment.

In order to succeed as to that form of breach of the duty of disclosure, Benson would have to establish that "[t]he risk [attending no treatment was] . . . a more than negligible risk of [particular adverse problems] that will have serious consequences," *Feeley* v. *Baer*, 424 Mass. at 877; and that the risk information associated with the no treatment option which should reasonably have been disclosed was "information possessed by the average qualified physician or, in the case of a specialty, by the average qualified physician practicing that specialty." *Harnish, supra* at 155.[5] Additionally, Benson had the ultimate obligation of showing that had such an option and its associated risks been provided, "neither he nor a reasonable

---

[4]Benson in fact made no such contention either below or on appeal, notwithstanding this court's direct inquiry at oral argument whether he was basing his claim of lack of informed consent on the failure to have been informed of the no-treatment option and its attendant risks. Rather, he continued to insist that the genuine issue of material fact precluding summary judgment was whether MGH had provided any information to him at all regarding the treatments reflected in the consent forms and their risks.

[5]"What the physician should know involves professional expertise and can ordinarily be proved only through the testimony of experts." *Harnish* v. *Children's Hosp. Med. Center*, 387 Mass. 152, 156 (1982). As indicated above (see note 3, *supra*), Benson neither offered, proposed to offer, nor sought the opportunity to obtain expert testimony on any issue.

person in similar circumstances would have undergone the procedure." *Id.* at 158. Benson's deficient response to MGH's summary judgment motion failed even to allude to (much less provide) any evidence or anticipated evidence discharging his burden with respect to any of these issues. See *Precourt* v. *Frederick*, 395 Mass. 689, 696 (1985); *Feeley* v. *Baer*, 424 Mass. at 877-878. Benson would have been unable, accordingly, to survive MGH's motion on the basis of its supposed failure to have disclosed a "no-treatment option," even had he explicitly asserted such a theory.[6]

*Judgment affirmed.*

---

[6]Although not argued by MGH either in its brief or in support of its summary judgment motion, it appears from Benson's interrogatory answers that his claim against MGH is entirely based upon its vicarious liability for the physician who actually treated him and who was identified as MGH's "employee." Since discovery had closed and "there is nothing [in the record] to show that the hospital had power of control over [that physician's] professional conduct," Benson could not have prevailed against MGH on that ground. See *Harnish* v. *Children's Hosp. Med. Center*, 387 Mass. at 159. See also *Richardson* v. *Liberty Mut. Fire Ins. Co.*, 47 Mass. App. Ct. 698, 703 n.10 (1999).