van Gestel, J.
This matter is before the Court on cross motions for summary judgment pursuant to Mass.R.Civ.P. Rule 56.
BACKGROUND
In 1995, the Massachusetts Port Authority (“Massport”) appealed from the granting of a variance by the Boston Board of Appeal (the “Board”) to Suffolk/Medford Realty Trust (the “Trust”). The variance would permit the Trust to convert a long-vacant warehouse building in Charlestown to “124 Apartments with Ground-Level parking.” The property is to be rehabilitated into residential/studio working space for Boston area artists and other design professionals. Except for Massport, at the time of the granting of the variance, the project received overwhelming support from the immediate neighborhood, from the Mayor’s Office of Cultural Affairs, from the Boston Redevelopment Authority and from the Carpenters Union, AFL-CIO. The variance was granted by a unanimous vote of the Board of Appeal.
In granting the variance, the Board noted “an acute need” in Boston for artists’ studio residences, and found “(r)esidential use of this historic and handsome industrial building will be in harmony with the general purposes of the [Boston Zoning] Code, because it is adjacent to a residential area.” A “menacing eyesore” would be turned into a neighborhood “amenity.” Further, the Board observed that Massport “offered no present likelihood that [an industrial] use could be found for [the building].”
The properly, although abutting a residential area, was in the Terminal Street Manufacturing Subdistrict which was then zoned for industrial and manufacturing uses. Thus the need for the variance.
In July of 1998, Massport entered into an agreement with the Trust whereby for certain rights regarding the property, it dismissed, with prejudice, its appeal of the decision granting the variance concerning the use proposed. Among other things, the agreement of July 8, 1998, included a concession by the Trust that Massport owns and operates substantial areas of industrial property in the near vicinity, thereby generating noise, truck traffic, dust and other activities twenty-four hours a day, to which the Trust and its tenants will not object. Massport also obtained an easement over the property for certain road and other industrial activity and a “right of first offer” to purchase the premises.
The essence of the July 8, 1998, agreement was that Massport was withdrawing its objection to the Trust’s project as approved by the Board of Appeal in return for the concessions noted above and others detailed in the letter. The agreement specifically recites that the “Trust will be allowed to pursue its present plans to rehabilitate the existing building ... on the premises for approximately 124 units (each to accommodate a mixed working studio and residential use) with associated parking to be designed for and marketed to artists ...”
In addition to the zoning issuesolved by the variance and the withdrawal of Massport’s appealthe property is also located within a Designated Port Area (“DPA”), as determined by the Massachusetts Department of Environmental Protection (“DEP”). Both the DEP and the Massachusetts Office of Coastal Zone Management (“CZM”) strongly favor water-dependent industrial uses within a DPA and limit other uses in these areas. Therefore, in addition to the zoning vari- *771 anee, the Trust still had to petition the CZM to have the boundaries of the DPA moved such that the project falls outside of them. Massport and the Trust were aware of this issue when they entered into the settlement of the zoning appeal.
Preliminary to proceeding to seek an adjustment in the DPA boundaries, counsel for the Trust wrote to Massport, seeking its support. Massport refused, stating that it “will not support your client’s proposal to re-designate the DPA in Charlestown,” knowing full well that without such a re-designation, the project' could not go forward.
Although there are more facts relating to the efforts of the Trust and its many community supporters, including the Mayor of Boston, to convince Massport to affirmatively support the DPA boundary change so that the project may proceed, Massport remained steadfast in its refusal. As a result, the Trust sought the aid of this Court seeking to enjoin Massport from opposing the DPA change and compelling it to support the petition.
In its memorandum and order on the Trust’s application for a preliminary injunction this Court wrote:
Massport, when it entered into the July 8, 1998, agreement resolving the zoning appeal, entered into a binding contract agreeing to allow the Trust to pursue its plans to rehabilitate the building for 124 units of artists’ studio and residential space, with necessary parking and other amenities. Massport received good and valuable consideration for its agreement. For Massport now to oppose the change in the boundary lines for the DPA, thereby knowingly to prevent the very project it agreed to allow, would constitute at minimum a breach of its contract with the Trust, a violation of its implied covenant of good faith and fair dealing, and quite probably a serious and intentional violation of G.L.c. 93A. See Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 469-74 (1991).
This Court presumes that a responsible public authority would not knowingly commit the breaches and violations just outlined. Indeed, at the oral argument on the request for injunctive relief, counsel for Massport assured this Court that his client did not intend to oppose the Trust’s petition to CZM for a change in the DPA boundary, but rather was simply reserving its rights to make sure that the petition remained consistent with the project approved by the zoning variance. The Court accepts that representation from a respected attorney and officer of the court on behalf of a responsible public authorityand it will hold them both strictly thereto.
On the specific issue of the preliminary injunctive relief, given Massport’s representations to the Court that it will act in a manner fully consistent with the explicit approval of the Trust’s project appearing in the July 8, 1998, letter agreement, no injunction is necessary at this time. Provided, however, that should Massport take a position inconsistent with its agreement and its representations to the Court once the Trust’s petition is submitted to CZM, this Court will act instantly in whatever manner may then be appropriate.
See memorandum and order dated April 2, 2001.
On May 25, 2001, the Trust proceeded with the filing of its petition with CZM. The administrative process was lengthy. CZM began its DPA boundary review in the fall of 2001. In January 2002, two other Mystic River DPA property ownersFlatley and CCC Realty Trustalso petitioned CZM to remove a total of four additional properties from the DPA.
CZM conducted a series of public information meetings and met extensively with owners of DPA properties, City of Boston and state agency staff, and community representatives to gather information and comment on the matters.
At one of the public meetings, someone (not a Massport representative) suggested that Massport’s statement of non-opposition to the Trust’s position had been made under duress. The statement referred to was included in a June 20, 2001, letter from Massport to the Trust, and submitted by the Trust to the CZM. In pertinent part, Massport’s letter read:
Massport, having now reviewed the proposed Petition, hereby states that it does not oppose the proposed Petition by the Trust to remove the Property from the DPA, provided that the Settlement Agreement is and will continue to be fully implemented.
Because of the suggestion that Massport’s non-opposition was made under duress, the Trust asked Massport to reaffirm its non-opposition. In response, Massport provided the Trust with a draft letter for its consideration. By an e-mail message, the Trust stated its approval of Massport’s draft letter and instructed Massport to send the letter directly to CZM. The e-mail read:
On behalf of our client, Michael Rauseo, Trustee of Suffolk Medford Realty Trust, I have reviewed the draft letter you sent on October 2nd affirming Massport’s position with respect to the CZM Petition. I have reviewed the same with our client. We agree that your draft letter adequately addresses Mr. Rauseo’s concerns as expressed in Eric Wodlinger’s letter to you dated September 26th. Please arrange for the execution and delivery of this letter to CZM as soon as possible. Thank you for your assistance in this matter.
Massport’s Port Director sent the letter directly to CZM on October 17, 2001. It read:
I have since been informed that in the course of the CZM public meetings conducted in Charlestown to discuss the proposed DPA boundary modification, *772 some commenters have suggested that Massport either did not, or does not now concur with the position expressed in the June 20 letter.
In response to this suggestion, I want to affirm Massport’s position, which was clearly stated in the June 20 letter.
As required by regulation, CZM consulted with Massport during the boundary review process to gather strictly factual information about the DPA.
There is nothing in the summary judgment record establishing that Massport, in any way, conveyed to CZM a position on the Trust’s petition other than as described in the June 20, 2001, letter.
On October 9, 2002, CZM issued a document entitled “Boundary Review of the Mystic River Designated Port Area, Charlestown Shore” (the “Draft Decision”). In the Draft Decision, CZM determined that CCC Realty Trust’s petition, and Flatley’s petition as to one of its properties, should be denied. CZM determined further that another Flatley propertythe Schrafft Cen-tershould be removed from the DPA because it did not qualify under DPA designation standards. CZM determined that the Trust’s Property and another of Flatley’s properties qualified for inclusion in the DPA, but nonetheless CZM approved the petitions to remove these properties subject to certain conditions.
One condition in the Draft Decision was a requirement that the Trust and Flatley agree to split the costs of an engineering study for a haul road. Massport took no position on the engineering study and had nothing to do with CZM’s decision to require the Trust to contribute toward its cost.
CZM issued its final “Designation Decision for Mystic River Designated Port Area, Charlestown Shore” (the “Final Decision”). The Final Decision adopted the recommendations of the Draft Decision and added two additional requirements: (1) the filing of an Environmental Notification Form with MEPA, if necessary, subsequent to the haul road engineering study; and (2) the execution by the Trust of an easement, rather than a restrictive covenant, to record the use restrictions set forth in the Letter Agreement.
The Trust did not appeal from the Final Decision. Three other DPA property owners, however, did appeal and those appeals are now pending in the Superior Court. These appeals are major obstacles to the Trust’s project.
In its opposition papers, the Trust points to no material facts that are different from those set forth above. Rather, it suggests that the Court must infer certain behind-the-scenes actions or manipulation by Massport that subliminally caused CZM to understand that Massport really was opposed to the Trust’s petition or caused others presumed to be in league with Massport to make the opposition arguments. This, to quote Rauseo’s counsel at oral argument, “was all done with a wink and a nod.”
DISCUSSION
Summary judgment is granted where there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law. Hakim v. Massachusetts Insurers' Insolvency Fund, 424 Mass. 275, 281 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “A complete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial.” Kourouvacilis, supra, at 711.
The complaint, although in eight countsCount I, breach of contract; Count II, breach of implied covenant of good faith and fair dealing; Count III, for promissory estoppel; Count IV, for intentional interference with advantageous relations; Count V, for violation of G.L.c. 93A; Count VI, for fraud; Count VII for mandamus relief; and Count VIII, for preliminary and permanent injunctive reliefis really a rather straightforward breach of contract claim. The first paragraph of the complaint basically says it all.
This is an action against the Massachusetts Port Authority for its refusal to honor its promise to the plaintiff and to the people of Charlestown and Boston.[1] Plaintiff Michael Rauseo and the Suffolk/Medford Realty Trust seek this Court’s intercession to require Massport to live up to its word, and to respect the contractual commitments to which it has agreed.
This Court did intercede and, although it warned Massport to abide by its agreement, it did not enter any order that compelled Massport to act in any way, nor did it find that Massport had failed to abide by its promise. Thereafter, Massport did “live up to its word, and . . . respect the contractual commitments to which it has agreed.”
The contract, of course, is the letter agreement dated July 8, 1998. By that letter agreement, Massport committed itself to two things: (1) to dismiss with prejudice its appeal of the decision granting a variance to the Trust; and (2) to allow the Trust to pursue its plans to rehabilitate the building for 124 units of artists’ studio and residential space, with necessaiy parking and other amenities. In return, the Trust agreed to a number of conditions. The appeal was promptly dismissed and Massport, so far at least, has allowed the Trust to pursue its plans with regard to the Property without objection or opposition.
It is significant to note that the letter agreement only bound Massport to “allow” the Trust to proceed. It did not mandate that Massport support the project. It was, and will be, sufficient for Massport simply not to oppose the Trust’s efforts.
*773 The Trust’s unsubstantiated suspicions that Massport did something behind the scenes to oppose the Trust’s petition to the CZM or cause the CZM to impose conditions on its approval do not amount to anything more than “mere assertions of disputed fact,” which are not sufficient to defeat a motion for summary judgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). “Such ‘bare assertions and conclusions regarding . . . [Rauseo’s] understandings, beliefs, and assumptions are not enough to withstand a well-pleaded motion for summary judgment.’ Polaroid Corp. v. Rollins Envtl. Servs. (NJ), Inc., 416 Mass. 684, 696 (1993).” Benson v. Massachusetts General Hosp., 49 Mass.App.Ct. 530, 532 (2000).
Additionally, this Court should not overlook the obvious fact that CZM did not deny the Trust’s petition to remove the Property from the DPA, it granted it. This was conceded by one of Rauseo’s attorneys to be contrary to the ideology of the CZM. Mr. Herbert Gleason, a very experienced attorney in dealing with City of Boston and state regulatory matters, in his deposition described his view of the CZM’s ideology as: “Never, never, never, change a designated port area boundary.”
There being no breach of contract by Massport, none of the remaining countswhich all depend upon such a breachcan withstand Massport’s motion either.
ORDER
For the foregoing reasons, Massachusetts Port Authority’s Motion for Summary Judgment (Paper #25) is ALLOWED and Plaintiffs Cross Motion for Summary Judgment (Paper #27) is DENIED. Judgment shall enter accordingly, dismissing the complaint with each party bearing its or his own costs.

The complaint is brought by Rauseo as Trustee of Suffolk/Medford Realty Trust. The “people of Charlestown and Boston” are in no way parties to this action.