Smith, Herman J., J.
I. INTRODUCTION
This action arises from a dispute over a commercial lease for store premises at the Fresh Pond Shopping Center in Cambridge, Massachusetts. The Plaintiff landlord, Fresh Pond Mall Limited Partnership, alleges that it is entitled to damages because the defendant, Payless ShoeSource, Inc. materially breached the lease by improperly terminating the lease and failing to pay rent. Payless argues that it lawfully exercised an option to cancel the lease and therefore, was not obligated to make rent payments. Before the court are the parties’ cross motions for summary judgment. For the reasons set forth below, after a hearing and review of the summary judgment record, Fresh Pond’s motion is DENIED and Payless’s motion is ALLOWED.
II. BACKGROUND
The following undisputed facts are taken from the summary judgment record. On September 12, 1990, the Fresh Pond Shopping Center Trust, predecessor-in-title to plaintiff, Fresh Pond Mall Limited Partnership (“Fresh Pond”), and defendant, Volume Shoe Corporation, now known as Payless ShoeSource Inc. (“Payless”) entered into a lease for store premises at the Fresh Pond Shopping Center in Cambridge, Massachusetts. Among the factors considered by Payless in evaluating a potential leasehold store location is the nature and type of other tenants and the quantity and quality of consumer traffic that the other tenants are anticipated to generate. At the time of the execution of the lease, there were two “Key Tenants,” Ames and T.J. Maxx, occupying 72,325 square feet and 20,760 square feet of building space, respectively. The Ames premises was occupied as a major retail discount department store under Ames’s “Zayre” trade name. In 1990, Ames was considered to be a major anchor tenant in the shopping center industry. The Payless brand and the line of merchandise sold by it are considered to be discount footwear and accessories. Payless considered Aines/Zayre’s customers to be likely customers of the Payless lines of merchandise.
Section 1.07 of the lease expressly outlines the appeal of the Key Tenants in inducing Payless to enter into the lease. Section 107 of the lease specifically provides:
As a material inducement leading Tenant to enter into this Lease, Landlord warrants and represents that it has entered into Agreements with certain Key Tenants, which Agreements provide for occupation of portions of the Development as depicted on Exhibit B for the use and space of Key Tenant indicated as follows:
Approx. Key Tenant Use Square Feet
1.Ames Department 72,325
2. T.J. Maxx Fashion 20,760
Section 1.08 of the lease gives a tenant an option to cancel in the event a Key Tenant leaves and provides as follows:
In the event of cancellation, expiration or other termination of one or more of the Key Tenant Agreements referred to above during the primary or extended terms of this Lease, and if any portion of such spaces remains continuously vacant by any such Key Tenant for a period of six (6) months, and Landlord fails to execute a lease with a comparable Key Tenant within said six (6) months, then Tenant, at its option, may cancel this Lease upon sixty (60) *33 days prior written notice. Upon cancellation, Tenant will be relieved of any further obligation to Landlord.
Also within the lease is a “No Waiver” section which provides in relevant part:
Section 20.11 No Waiver. No waiver of any default hereunder shall be implied from any omission by either party to take any action on account of such default if such default persists or is repeated ... No delay or omission by either party hereto to exercise any right or power accruing upon any noncompliance or default by the other party with respect to any of the terms hereof, or otherwise accruing hereunder shall impair any such right or power or be construed to be a waiver thereof.
In 1992, the Ames lease was terminated in connection with its bankruptcy. After the premises were vacated by Ames, 18,000 square feet of those premises was occupied by Staples, Inc. and 46,068 square feet was occupied by Toys “R” Us, Inc. At some point during Toys “R” Us’s occupation of the premises, Payless consented to Petsmart’s sub-leasing a portion of Toys “R” Us’s premises. There was also a small wellness center located within Ames’s former space. At least 8,000 square feet of Ames’s lease was never re-let at any material time.
From 1990 until 2006, Payless paid rent on the leased premises without objection. Since 1990 and during the course of the lease, Payless executed three estoppel certificates all of which confirmed that there had been no breach of lease or default.
The initial term of the lease was for ten years starting on or about November 1, 1990 and gave Payless an option to extend the lease for an additional two-year period. Payless exercised its right and option to extend the term of the lease for one additional period of two years beyond the expiration of the primary term. On or about September 12, 2002, Payless and Fresh Pond entered into a written agreement that extended the lease by three years until October 10, 2005 and gave Payless a further extension option for three more years. Payless exercised this right and the lease was again extended to October 31, 2008. The written extensions of the lease expressly reserve Payless’s cancellation rights.
On or about March 10, 2006, Toys “R” Us closed its store[1] and Payless experienced a significant decline in sales. On June 12, 2006, Payless sent Fresh Pond a letter requesting a lease modification for rent relief. Payless informed Fresh Pond that in the absence of rent relief, it would consider closing the store. Fresh Pond did not agree to the requested lease modification and stated that it intended to hold Payless to all of its obligations under the lease. On September 11, 2006, Payless sent Fresh Pond its notice of termination under section 1.08 of the lease. On February 4, 2007, Payless vacated the leased premises.
III. DISCUSSION
Under the established standard, summary judgment shall be granted where there is no genuine issue as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Commc'ns Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Parties may not rely on “bare assertions and conclusions” to create a dispute necessary to defeat summary judgment. Benson v. Massachusetts Gen. Hosp., 49 Mass.App.Ct. 530, 532 (2000), quoting Polaroid Corp. v. Rollins Envtl. Servs. (NJ), Inc., 416 Mass. 684, 696 (1993). Summary judgment is also appropriate when resolution of the case depends solely on answers to questions of law. Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983).
A. PAYLESS SATISFIED THE REQUIREMENTS UNDER SECTION 1.08 OF THE LEASE FOR EARLY TERMINATION
The first count of Fresh Pond’s complaint alleges that Payless breached the lease by improperly terminating the lease and failing to pay rent. To recover on this claim, Fresh Pond must prove the basic elements of a claim for breach of contract: (1) the existence and terms of a contract supported by valid consideration; (2) that Fresh Pond performed; (3) that Payless breached the contract; and (4) that Payless’s breach resulted in harm or damages to Fresh Pond. See Singarella v. City of Boston, 342 Mass. 385, 387 (1961). The essential issue in this case is whether Payless breached the lease by improperly terminating the lease or whether Payless’s termination was a lawful cancellation pursuant to section 1.08 of the lease.
When parties reduce the terms of their agreement to a written contract, any conflict as to the meaning and applicability of terms is a question of law. See USM Corp. v. Arthur D. Little Sys., Inc., 28 Mass.App.Ct. 108, 116 (1989). Therefore, whether there was an absence of a Key Tenant under section 1.08 of the lease is a question for the court, since it requires interpretation of the contract rather than resolution of disputed facts. See Ober v. National Cas. Co., 318 Mass. 27, 30 (1945). A contract is to be construed to give a reasonable meaning to each of its provisions and in a manner which will carry out the intention of the *34 parties. McMahon v. Monarch Life Ins. Co., 345 Mass. 261, 264 (1962). “The object of the court is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose.” USM Corp. v. Arthur D. Little Sys., Inc., 28 Mass.App.Ct. 108, 116 (1989). When the words of a contract are clear, they must be construed in their usual and ordinary sense. General Convention of the New Jerusalem in the U.S., Inc. v. MacKenzie, 449 Mass. 832, 835 (2007).
According to the plain meaning of the terms of the lease, in order to invoke section 1.08 of the lease, the following must occur: (1) termination of one of the two Key Tenant leases during the original or any extended term of the Payless lease; (2) any portion of the space remains continuously vacant by any Key Tenant for a period of six months; and (3) Fresh Pond fails to execute a lease with a comparable Key Tenant within said six months. This language is not ambiguous. It is undisputed that in 1992 the lease of a Key Tenant, Ames, was terminated in connection with its bankruptcy and at least 8,000 square feet remained vacant for six months. Based on a reasonable interpretation of section 1.08, Payless rightfully had the option to cancel the lease after any portion of the Ames premises remained vacant for six months and Fresh Pond failed to execute a lease with a comparable tenant.
Fresh Pond argues that Toys “R” Us was a successor Key Tenant and its lease was never cancelled, expired or terminated and thus Payless could not exercise its right to cancel under section 1.08. However, Fresh Pond fails to present any evidence that Toys “R” Us was in fact a “comparable” Key Tenant as required under the lease. Fresh Pond offered no expert affidavit in support of its contention. Nor did Fresh Pond offer by way of affidavit, financial data, sales records, sale volume data, market share data, or the like to demonstrate a triable issue on comparability. The bare assertion by Fresh Pond that Toys “R” Us was a comparable Key Tenant is not enough to create a dispute necessary to defeat summary judgment. Benson, 49 Mass.App.Ct. at 532, quoting Polaroid Corp., 416 Mass. at 696. To the extent that “comparable Key Tenant” is not defined by the lease or is ambiguous, the meaning can be determined from industry usage. Holyoke Water Power Co. v. Whiting & Co., 276 Mass. 528, 539 (1931). As set forth in the summary judgment record, Ames was a major retail discount department store, which, among dozens of other products, sold toys and baby products, while Toys “R” Us is a specialty toy and baby products retail store, with no sales in any other retail category. “Comparable” is commonly defined as “capable of being compared . . . worthy of comparison . . . similar or equivalent.” The American Heritage Dictionary 300 (2nd ed. 1985). A reasonably intelligent person would not find a discount department store with an extensive range of products and a retail store with sales limited to toy and baby product to be equivalent. Based on the plain meaning of comparable, the lack of evidence as to how Toys “R” Us could be considered comparable to Ames and construing the lease as a whole, in a reasonable and practical way, Toys “R” Us is not a comparable Key Tenant and Payless lawfully invoked section 1.08 of the lease.
B. PAYLESS DID NOT WAIVE ITS RIGHT TO CANCELLATION
Fresh Pond also argues that Payless waived its cancellation rights by not exercising them until after Toys “R” Us closed its store in 2006 and by virtue of its execution of multiple estoppel certificates. Section 20.11 of the lease specifically addresses the issue of waiver and states that “no delay or omission by either parly hereto to exercise any right or power accruing upon any noncompliance or default by the other party . . . shall impair any such right or power or be construed to be a waiver thereof.” Additionally, each one of the lease extension agreements stated that Payless’s execution of its option to renew or extend the term of the lease shall not be deemed a'waiver of its cancellation rights under the lease.[2]
Fresh Pond, relying on M.J.G. Properties, Inc. v. Hurley, 27 Mass.App.Ct. 250 (1989), argues that the anti-waiver provision in the lease is not absolute and that the court should rule that Payless waived its right to cancel under section 1.08 because it paid rent without objection from 1990 until 2006 and executed three estoppel certificates. The court’s ruling in M.J.C. Properties was confined to the particular facts of that case and specifically stated “we need not decide the effect of the anti-waiver clause in other circumstances.” Id. at 253 n.6. The court in M.J.C. Properties stated that the proper approach to waiver issues is to look at the question of waiver as a question of fact in light of all the circumstances, including the existence of an anti-waiver clause. Id. at 262. While the question of waiver is generally a question of fact, the issue can be decided on summary judgment where the facts material to waiver are undisputed, “and only one possible inference may arise from those facts.” Dynamic Machine Works, Inc. v. Machine & Elec. Consultants, Inc., 444 Mass. 768, 773 (2005), citing Central Illinois Public Serv. Co. v. Atlas Minerals, Inc., 965 F.Sup. 1162, 1174 (C.D.Ill. 1997). “(W]here waiver is not explicit, it must be premised on ‘clear, decisive and unequivocal conduct.’ ” Kact, Inc. v. Rubin, 62 Mass.App.Ct. 689, 695 (2004), quoting Glynn v. Gloucester, 9 Mass.App.Ct. 454, 462 (1980).
Here, the facts material to the issue of waiver are undisputed, therefore it is appropriate for the issue to be decided on summary judgment. It is undisputed that an anti-waiver section was included not only in the original lease but in each of the extension agreements. It is also undisputed that Payless paid rent without objection from 1990 until 2006 and executed three estoppel certificates. However, these facts do not *35 further Fresh Pond’s argument. The estoppel certificates state in relevant part:
The statements contained herein are not affirmative representations, warranties, covenant or waivers, but shall act solely to estop the undersigned from asserting any claim or defense against [the named recipient] to the extent such claim or assertion is based upon facts now known to the undersigned which are contrary to those contained herein, and [named recipient] for fair value, has acted in reasonable reliance upon such statements without knowledge of facts to the contrary.
The estoppel certificates refer to the lease and recite boilerplate certificate language as to the identity of the parties, the non-existence of any breach or default by the landlord or tenant, the rent status, the term of the lease and that the certificate is given to the named recipient. The estoppel certificates were created for the benefit of the named recipients, which are listed on the certificates as Fleet Bank of Massachusetts, Rusen Atiniz, Trustee of Fresh Pond Shopping Center Trust and General Electric Capital Corporation, respectively.
The existence of an option to cancel the lease is not a default or a breach of the lease. The language of section 1.07 of the lease only guarantees that, as a material inducement leading Payless to enter into the lease, Fresh Pond had entered into agreements with certain Key Tenants. There is no language stating that Fresh Pond promises to keep these particular Key Tenants for an undetermined period of time. Rather, the parties considered the possibility that a Key Tenant would at some point vacate the premise and provided Payless with an option to cancel if that situation were to arise. Fresh Pond and Payless recognized, as evidenced by the language in section 1.07, that part of the value of the lease to Payless was the income it could earn from consumer traffic from Key Tenants. Cancellation, expiration or termination of one or more of the Key Tenants is not a default or breach of the lease, but the occurrence of such events gives Payless the right to cancel under section 1.08. No reasonable reading of the estoppel certificates can infer that Payless, by executing the certificates, was waiving its cancellation rights.
There is no evidence in the record to suggest “clear, decisive and unequivocal conduct” on behalf of Payless to waive its cancellation rights. The right to cancel the lease under section 1.08 was just that, a right, not an obligation, and the failure to immediately exercise that right cannot be deemed a waiver of Payless’s right to cancel the lease in the absence of a Key Tenant. As stated above, a written contract should be given a construction that will give a reasonable meaning to each of its provisions and in a manner which will carry out the intention of the parties. McMahon, 345 Mass. at 264. The lease between Fresh Pond and Payless expressly gave Payless the option to cancel the lease in the absence of a Key Tenant and did not require Payless to immediately exercise that right. Furthermore, that right was preserved in each of the subsequent extensions to the lease. That Payless waited until it experienced a significant decline in sales before exercising its option to cancel, cannot be construed as a waiver of that right.
C. PAYLESS IS ENTITLED TO SUMMARY JUDGMENT ON COUNT II
The second count of Fresh Pond’s complaint seeks damages under G.L.c. 93A. Given that Payless was entitled to cancel the lease pursuant to section 1.08 of the lease and therefore did not breach the lease, Fresh Pond’s allegations of a violation of c. 93A must fail.
IV. ORDER
For the foregoing reasons, it is ORDERED that plaintiff Fresh Pond Mall Limited Partnership’s Motion For Summary Judgment be and hereby is DENIED and that defendant Payless ShoeSource, Inc.’s Cross Motion For Summary Judgment be and hereby is ALLOWED.

Toys “R” Us’s leasehold was acquired by Vomado Realty Trust.

The lease extension agreement entered into on September 12, 2002 states in relevant part, “Tenant’s execution of this Lease Amendment/Extension Agreement or exercise of any option to extend the term of the Lease shall not be deemed a waiver of its cancellation rights, if any, under the terms of the Lease.”The notices from Payless to Fresh Pond dated July 28, 2000 and June 16, 2005 exercising an extension option also recited: ‘Tenant’s execution of its option to renew the Lease shall not be deemed a waiver of its cancellation rights, if any, under the terms of the Lease for the subject property.”