Connors, Thomas A., J.
Nationstar Mortgage, LLC (“Nationstar”) conducted a foreclosure sale of Moronta’s Quincy home on November 17, 2009. Moronta filed this lawsuit on July 23, 2010, against Nationstar and Fremont Investment and Loan (“Fremont”), the prior owner of Moronta’s mortgage. Nationstar seeks summary judgment on Moronta’s claims against it which allege that: 1) the foreclosure sale was invalid because Nationstar had failed to comply with a then-existing preliminary injunction, and; 2) that Nationstar violated G.L.c. 93Aby foreclosing on an “inherently unfair” mortgage and misleading Moronta in his efforts to work out a loan modification. As discussed below, the motion for summary judgment will be ALLOWED.
Background
Moronta purchased the properly at 152 Independence Avenue in Quincy, Massachusetts for $348,000.00 on July 9, 2004. On that date, Moronta executed an Adjustable Rate Note in favor of Wells Fargo Bank, N.A., secured by a mortgage in the amount of $330,600.00. Moronta’s initial monthly payment was $1,825.59 but under the terms of the adjustable rate note, the monthly payment rose to $2,884.00 in August of 2006.
In January of 2007, Moronta contacted Popular Mortgage Group (“Popular”) to discuss his refinancing options for the property. Popular requested an appraisal of the property on January 5, 2007. The appraisal was conducted by Andrew Goutuyan, a Massachusetts State Licensed Residential Real Estate Appraiser. Goutuyan appraised the property’s value at $420,000.00. Moronta did not know the value of his property at that time, nor did he discuss the appraisal with the Popular broker. Popular prepared several documents on Moronta’s behalf that were submitted to Fremont in connection with Moronta’s request for refinancing of his loan. Fremont responded by sending Moronta certain disclosure documents, however, Moronta did not read or review these documents.
On January 24, 2007, Moronta signed a Uniform Residential Loan application. The application lists his employment income as $8,500.00 per month and the market value of the properly at $420,000. That same day, Moronta executed an Adjustable Rate Note in favor of Fremont in the amount of $296,000.00 which bore an initial interest rate of 7.9%. Under the Note’s terms, its rate of interest was scheduled to climb in February of 2010 to somewhere in the range between 7.9% and 13.9% dependent upon the then current index rate. Nationstar asserts that the prevailing index rate in February 2010 would have resulted in the interest rate remaining unchanged at 7.9%.
During the same closing, Moronta executed a second Fixed Rate Note in favor of Fremont in the amount *340 of $74,000.00, which required him to make monthly payments of $676.91 to Fremont. The total encumbrances on the property were $370,000 as a result of the two mortgages. Moronta used $322,118.83 to pay off the earlier Wells Fargo mortgage and he, personally, received a check for $37,114.23 at the time of closing. The total monthly principal and interest payments for the two loans was $2,664.34. Moronta asserts that, when including payment for taxes and insurance, his monthly payments to Fremont totaled $3,045.51. Nationstar was not a party to, nor involved in any way with, the closing of the Fremont loans.
The Federal government has investigated Fremont alleging unsound banking practices and as a result, Fremont signed a consent agreement with the Federal Deposit Insurance Corporation on March 7, 2007.[2] Fremont transferred its interest in both Notes to Nationstar on or about March 30, 2007. Fremont then also transferred the servicing of Moronta’s loans to Nationstar on July 10, 2007. Moronta kept up with his payments through November 2008. In December 2008, Moronta defaulted on both mortgages prior to any possible upward adjustment of his rate of interest under the Note.
Early in 2009, Moronta contacted Nationstar and requested a loan modification. In June or July of2009, Nationstar offered Moronta a trial loan modification that would have, initially, lasted for three months. The modification would have lowered Moronta’s monthly payment from $3,050.00 to $2,500.00 but Moronta declined that offer to modify, citing a drop in his income to $3,700 per month. Instead he requested a different loan modification at a more affordable monthly payment. Throughout the loan modification process, Nationstar directed Moronta to several different contact people and required him to resubmit paperwork on multiple occassions, including one instance in which a Nationstar representative failed to process some of Moronta’s information.
On October 15, 2009, Nationstar provided Moronta with notice of its intent to foreclose on the property, with a foreclosure sale scheduled for November 17, 2009. Moronta retained an entity called GIM Services to try to work out a modification with Nationstar so that Moronta could stay in his residence. After he had retained GIM Services to act on his behalf, Moronta, personally, no longer contacted Nationstar. According to Moronta, GIM Services continued to have dialogue with Nationstar concerning a loan modification, and at one point Nationstar informed a GIM representative that the foreclosure sale had been postponed and that it needed some additional financial documents from Moronta. On October 26, 2009, a GIM representative told Moronta that his application for a modification had been denied because he had too much debt and would not be able to afford a mortgage. Notwithstanding this denial, GIM Services submitted additional documentation on November 17, 2009. Nationstar conducted the foreclosure sale that same day, at which Nationstar itself was the high bidder and purchased the property.
Moronta filed this lawsuit on July 23, 2010 against both Nationstar and Fremont. The Court granted Fremont’s motion for summary judgment, finding that Fremont transferred its beneficial interests in the loans on March 30, 2007, before the February 2008 preliminary injunction issued in Commonwealth v. Fremont Inv. & Loan. Commonwealth v. Fremont Inv. & Loan, SUCV07-4373 at *28 (Mass.Super.Ct. Feb. 25, 2008) (Gants, J.) [23 Mass. L. Rptr. 567, amended, 24 Mass. L. Rptr. 1). The Court found that Moronta’s mortgages were not subject to the injunction requiring that the Massachusetts Attorney General’s office be given notice before a Fremont mortgage is foreclosed upon.
Discussion
I. Standard of Review
Summary judgment is granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). For issues that the moving party does not have the burden of proof at trial, the absence of a triable issue may be shown by the submission of affirmative evidence that negates an essential element of the opposition’s case, or materials showing “that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts that would establish the existence of a genuine issue of material fact. Id. Parties may not rely on bare assertions and conclusions to create a dispute necessary to defeat summary judgment. Benson v. Massachusetts Gen. Hosp., 49 Mass.App.Ct. 530, 532 (2000), quoting Polaroid Corp. v. Rollins Envtl. Servs., Inc., 416 Mass. 684, 696 (1993). The court views the evidence in the light most favorable to the non-moving party, but does not weigh the evidence, assess credibility, or find facts. Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).
II. Wrongful Foreclosure Claim
Moronta’s claim for wrongful foreclosure is premised upon the preliminaiy injunction (“the Fremont injunction”) issued by Judge Gants in the Suffolk County Superior Court on February 25, 2008. Commonwealth v. Fremont Inv. & Loan, SUCV07-4373 at *28 (Mass.Super.Ct. Feb. 25, 2008) (Gants, J.), supra. That injunction required Fremont to obtain permis *341 sion from the Attorney General or from the Court, before instituting a foreclosure sale on any of the mortgages that it held. As noted above, this Court has already determined that Fremont had transferred its beneficial interest in the mortgages to Nationstar on March 30, 2007, prior to the Fremont injunction’s issuance.
Moronta asks this Court to rule that all subsequent purchasers of Fremont mortgages are bound to compliance with the terms of the Fremont injunction on the basis that they should have known they were acquiring a potentially unfair loan. Moronta argues that the Fremont injunction was “presumably intended to apply to all unfair Fremont loans issued between 2004 and 2007.” That assertion has no basis in law.
The Fremont injunction applied to all loans that Fremont itself then held. It did not have retroactive effect. The March 31,2008 modification to that injunction was intended to prevent Fremont from circumventing its terms by assigning its loans to a third party in futuro. It did not add new loans to the list to which the Fremont injunction applied. It simply ensured that the Fremont loans to which the Fremont injunction applied continued to receive the protections contemplated by the Court.
The specific requirement in the modified Fremont injunction that any subsequent purchaser of a Fremont loan accept the terms of the Fremont injunction in a written assignment further serves to undercut Moronta’s argument.[3] Ultimately, the Fremont injunction does not place a burden on third-party assignees of Fremont loans, where these loans had been acquired prior to the Fremont injunction, that they request permission from the Attorney General’s office, or this Court, to foreclose. This Court will not read such a requirement into Justice Gants’ carefully worded injunction in Fremont.
Here, Nationstar has adequately demonstrated that it complied with the statutory requirements prior to conducting the foreclosure sale of the property. Because this Court rejects Moronta’s assertion that Nationstar was required to follow the procedure set forth in the Fremont injunction, summary judgment must enter in favor of Nationstar on Count I of the plaintiffs Complaint.
III. Moronta’s Chapter 93A Claim
Moronta premises his Chapter 93A claim on two separate theories. The first is that Moronta’s loans met all four factors of the test set out in the Fremont decision, making the loans presumptively unfair under Chapter 93A, and that Nationstar acquired the loans after the FDIC had determined Fremont’s banking practices to be unsound, leading to the conclusion that Nationstar should have been aware that it was acquiring “toxic mortgages.” The second theory is that Nationstar violated the statute by failing to process Moronta’s loan modification applications in a commercially reasonable manner and failed to comply with the standards set out in HAMP.[4] Because Moronta has not demonstrated either that the loans meet all the elements of the Fremont test, or that Nationstar engaged in any inherently unfair conduct, summary judgment must issue in Nationstar’s favor on Count II of the Complaint.
A. Chapter 93A Claim Based Upon the Fremont Factors
Under the Fremont test, any mortgage secured by the borrower’s principal dwelling is presumed to be unfair if it meets each one of the following four requirements:
(1) The loan is an adjustable rate mortgage with an introductory period of three years or less;
(2) The loan features an introductory or “teaser” rate for the initial period that is at least two percent lower than the fully indexed rate, unless the debt-to-income ratio is fifty-five percent or above, then this criterion is eliminated entirely;
(3) The borrower has a debt-to-income ratio that would have exceeded fifty percent if the lender’s underwriters had measured the debt, not by the debt due under the teaser rate, but the debt due under the fully indexed rate (with an exception for student loans); and
(4) The loan-to-value ratio is ninety-seven percent or the loan carries a substantial prepayment pen-ally or a prepayment penally that extends beyond the introductory period.
Commonwealth v. H&R Block, 2008 WL 5970550 (Mass.Super.Ct.) (Gants, J.) [25 Mass. L. Rptr. 92] (modifying standard set forth in Fremont).
Here, Moronta has failed to show that his loans satisfied requirement four of the Fremont test. The total value of Moronta’s mortgages was $370,000. The property was appraised for $420,000 by a third-party appraiser licensed in Massachusetts. This yields a loan-to-value ratio of eighty-eight percent, well short of the ninety-seven percent ratio set forth in requirement four.
Moronta does not argue that the loans met any of the penalty exceptions outlined in requirement four. Instead, he contends that the appraisal value was inflated and that the property’s actual value was far below the appraised value. As stated above, in this motion for summaiy judgment, once Nationstar demonstrates the absence of a triable issue, Moronta “must respond and allege specific facts that would establish the existence of a genuine issue of material fact.” Kourouvacilis, 410 Mass. at 716. Nationstar cannot oppose the motion for summaiy judgment by relying on conclusoiy allegations or bare assertions. Benson, 49 Mass.App.Ct. at 532.
Moronta responds here by submitting a printout from the website “Zillow.com” that he contends dem *342 onstrates that the value of the property never exceeded $335,000. In addition, he submits evidence that the property had been assessed by the Quincy Assessor’s Office at $254,000. Neither of these two sources are sufficient to rebut Nationstar’s showing that the assessed value of the properly was $420,000.
One court which has dealt with this issue has ruled that Zillow.com is “inherently unreliable” in ascertaining true property values, noting that “[a] homeowner with no technical skill. . . can log in to Zillow and add or subtract data that will change the value of his property.” In re DaRosa, 442 B.R. 173 at *7 (Bankr.D.Mass. Nov. 17, 2010) (Hoffman, B.J.). Another judge, when presented with a Zillow.com “zestimate,” ruled that “(i]nternet searches are insufficient evidence of property value because they are at best questionable and at worst evidence of nothing.” In re Slovak, BKY 1247074 (Bankr.D.Minn. March 13, 2013) (Sanberg, B.J.).
The Quincy Assessor’s Office assessment is, likewise, fundamentally unreliable in establishing the property’s value. As noted in the DaRosa decision, “tax assessor’s valuations in Massachusetts [are] an unreliable index of current value.” DaRosa, 442 B.R. 173 at *6. While Massachusetts typically allows landowners to testify as to the value of land, Shane v. Shane, 891 F.2d 976, 982 (1st Cir. 1989) (permitting landowner to testify as to the land’s value), Moronta has already conceded at his deposition that he did not know the value of the property in 2007.
Moronta cannot create a genuine issue of material fact by relying upon these sources when Nationstar has put in evidence of a valuation based upon an appraisal by a third party licensed by the Commonwealth. Because Moronta has not responded to Nationstar’s motion for summary judgment with anything beyond conclusory allegations, this Court must find that Nationstar is entitled to summary judgment on the portion of Moronta’s Chapter 93A claim that relies upon the Fremont test.
B. Chapter 93A Claim Based Upon Unfair Loan Modification Practices
Loan modification practices that are in and of themselves unfair and deceptive may be violations of Chapter 93A. See Kozaryn v. Ocwen Loan Servicing, LLC, 784 F.Sup.2d 100, 103 (D.Mass. 2011). In his Opposition, Moronta cites the following instances as conduct that violated Chapter 93A: “bouncing Mr. Moronta between representatives who knew nothing about his loan modification requests, delaying the processing of Mr. Moronta’s information, requiring Mr. Moronta to re-submit documentation, offering a trial modification which was unaffordable, and claiming to process Mr. Moronta’s subsequent loan modification requests while, on the other hand, forging ahead with a foreclosure.”[5] Moronta cites to no authority where allegations of this nature have been found to violate Chapter 93A.
Here, Nationstar offered Moronta a loan modification that lowered his monthly payments by $500 each month. He declined this modification, citing his drop in income as the controlling factor. When asked for additional financial documents, Moronta’s representative, on his behalf, submitted these on the day of the scheduled foreclosure sale.
“[T]he boundaries of what may qualify for consideration as a [Chapter 93A] violation is a question of law.” Schwanbeck v. Federal-Mogul Carp., 31 Mass.App.Ct. 390, 414 (1991). The facts alleged by Moronta do not qualify as Chapter 93A violations. Conduct akin to that alleged by Moronta has been found insufficient as a matter of law to constitute a Chapter 93A violation. See Santelises v. Bank of America, N.A., 2012 WL 6045986, at *7 (D.Mass. 2012) (Sorokin, M.J.). Likewise, the fact that Nationstar offered Moronta a reduced monthly payment, even when it was not legally obligated to do so, scarcely serves to demonstrate that Nationstar’s conduct was unfair or deceptive. See Id. (finding no Chapter 93A violation based upon a servicer’s refusal to offer a reduced monthly payment that the homeowner found affordable); Kozaryn, 784 F.Sup.2d at 103 (allowing motion to dismiss Chapter 93A claims where the complaint contained no factual allegations demonstrating “unfairness”), and cases cited therein.
Since Moronta fails to present facts sufficient to constitute unfair and deceptive acts in violation of Chapter 93A on Nationstar’s part, summary judgment must be granted on this portion of his claim also.
Order
For the foregoing reasons, it is hereby ORDERED that Nationstar’s motion for summary judgment is ALLOWED.

This Court has taken judicial notice of the various orders and decisions, attached to plaintiff counsel’s affidavit, that have been issued in Commonwealth v. Fremont Inv. & Loan.

Any assignment of a loan from Fremont to a third party requires that “the assignee agrees in the written assignment to be governed by the terms of the Preliminary Injunction and its obligations.” Commonwealth v. Fremont Inv. & Loan, SUCV07-4373 at *6 (Mass.SuperCt., March 31, 2008) (Gants, J.) [24 Mass. L. Rptr. 12].

While Moronta references a potential claim based upon HAMP in his Opposition, he provides no argument elaborating on this claimed failure on Nationstar’s part.

Moronta’s assertions as to Nationstar’s unfair and deceptive conduct appear to have taken place after Moronta had retained GIM Services to represent him in negotiations with Nationstar. These assertions appear to be based upon hearsay. The Court, however, does not need to reach this issue since these assertions, even if fully credited, are insufficient to establish Nationstar’s liability under Chapter 93A.